[L. A. No. 16771.   In Bank.—April 12, 1940.]

KATHERINE MacDONNELL, Appellant, v. CALIFOR-
NIA LANDS INC. (a Corporation) et al., Respondents.

Edgar K. Brown and Leo B. George for Appellant.

Keyes & Erskine and Preisker, Goble, Twitchell & Stephan
for Respondents.

CURTIS, J.—The amended complaint is in two counts, the
first of which is in the usual form of an action to quiet title.

In the second count, it is alleged that defendant, California Lands, Inc., was the owner of said real property and agreed to sell the same to plaintiff for the sum of $6,000: $700 in cash and the balance to be represented by a promissory note for $5,300, secured by a trust deed upon said real property. Pursuant to said agreement, defendant executed a deed of said real property and plaintiff paid to defendant the sum of $700, and executed and delivered to defendant a promissory note in favor of defendant and a trust deed to secure the payment of said promissory note; that the deed from defendant was not delivered to plaintiff but was recorded in the office of the county recorder of the county in which said real property was located; that said deed, without the knowledge of plaintiff, contained a provision excepting and excluding therefrom all oil and mineral rights in said real property; and that said provision was fraudulently inserted in said deed by the defendant; that plaintiff believed and supposed that a deed in her favor had been made conveying all of said real property to her; and that she would not have paid said price, or any part thereof, nor would she have executed said promissory note and trust deed had she not believed that she was receiving a conveyance of all of said real property, including all subsurface rights therein. In the prayer to said complaint, plaintiff asked that defendant be required to execute to her a good and sufficient deed of conveyance of all of said property without exception of mineral rights, that her title be quieted except as to said trust deed, and that it be determined that defendant has no estate or interest in said real property. The case was tried upon said amended complaint and the answer thereto of defendant in which defendant in substance admitted that it sold to plaintiff said real property upon the terms stated by her in said amended complaint, excepting that it reserved from said sale all oil, gas, and mineral rights in and to the same. It further alleged that it was the owner of all said oil, gas, and mineral rights, and denied that plaintiff had any interest therein. It further denied all allegations of fraud contained in plaintiff's amended complaint, and alleged that it sold said real property to plaintiff under an agreement that all oil, gas, and mineral rights contained therein would be and were reserved to defendant. The answer of defendant also pleaded the statute of limitations and laches. Certain

fictitious parties were named in the amended complaint, and two parties defendant appeared, claiming to have been served under fictitious names. They represented that they had acquired a certain interest in the mineral rights in said real property through an agreement with the plaintiff. It will not be necessary to deal with their alleged rights in this opinion. The main defendant in this action is the California Lands, Inc., mentioned above, and we shall continue to refer to it as the defendant, or the respondent. The action resulted in a judgment in favor of the defendant, and the plaintiff has appealed.

█ It is first contended by the appellant that the trial court erred in sustaining respondent's objection to questions propounded to the appellant respecting conversations between appellant and certain persons, who the appellant claims were agents of the respondent and through whom she purchased said real property. The basis of respondent's objection to said questions was that there was no proper foundation laid for the admission of any evidence of said conversations, or in other words, that there was no evidence tending to show that the persons with whom the appellant had said alleged conversations, were the agents of the respondent or had any authority to bind respondent.

The appellant testified that the first time she saw the land involved in this controversy was on February 25, 1931, when she and her husband went out to see the land with a Mr. Hammond, a salesman for Mr. Roemer. After looking at the land they went back to the Rubel Building and there met Mr. Roemer and Mr. Glines. It was the office of the Valley Motor Sales Company of which Mr. Roemer was manager. Mr. Glines was the manager of the bank at that place. The bank here referred to was the Bank of America at Santa Maria. After arriving at the office of the Valley Motor Sales Company, the appellant and those present talked about the land. Appellant gave Mr. Glines $350, and at the direction of Mr. Glines a receipt for this money was given her by Mr. Roemer. This receipt was offered in evidence, but upon the objection of the respondent it was not admitted except for identification. Later on the appellant sent the balance of the $700, which represented the first payment, to the Bank of America at Santa Maria. Either at this time or shortly thereafter, the appellant signed the trust deed at the request of Mr. Shields, an officer of the bank. There

is no evidence, nor is it claimed that there is any evidence, that the appellant acquired said real property through negotiations with any other person than the four persons named above, Hammond, Roemer, Glines and Shields. Her evidence shows, and it is uncontradicted, that she was shown the land by Hammond, a salesman for Mr. Roemer, who thereafter took her and her husband to the office of the Valley Motor Sales Company where they met Mr. Roemer, the manager of the Sales Company, and Mr. Glines, the manager of the Bank of America at Santa Maria, where they had a conversation, which resulted in the appellant purchasing the land from the respondent. At their meeting the appellant paid Mr. Glines $350 and was given a receipt by Mr. Roemer for that amount. Thereafter appellant paid to the bank the remaining $350 to make up the cash payment, and under the direction of the bank executed the note and trust deed for the unpaid balance due from her on the land. At the time of the execution of said note and trust deed, the respondent executed and delivered a deed to the property in favor of the appellant. There is no question but that this deed was executed solely in consideration of the execution and delivery of said note and trust deed and the sum of $700 which had been paid by the appellant, partly to Roemer and Glines, and the balance to the bank. In other words, the respondent carried out in every detail the arrangement which the appellant had made with the persons who she claims were agents of the respondent. It is well established that the creation of an agency may be proved by circumstantial evidence. (*Hazard, Gould & Co.* v. *Rosenberg,* 177 Cal. 295 [170 Pac. 612]; *Reid* v. *Clay,* 134 Cal. 207, 211 [66 Pac. 262]; *Bergtholdt* v. *Porter Bros. Co.,* 114 Cal. 681, 688 [46 Pac. 738]; *Puget Sound Lumber Co.* v. *Krug,* 89 Cal. 237, 243 [26 Pac. 902]; *Smith* v. *Schuttpelz,* 1 Cal. (2d) 158, 161 [33 Pac. (2d) 836].) The respondent being a corporation could only act through agents. It accepted the fruits of the transaction entered into by the appellant with Hammond, Roemer, Glines and Shields and it would be unjust in the extreme to permit it to escape liability for any misrepresentations, if any were made by them to appellant, during these negotiations. The respondent offered no evidence to explain its connection with these four individuals with whom the appellant dealt in the purchase of said real property, nor to disclaim their apparent authority to act for it. In the absence of any showing to

the contrary, we are of the opinion that the circumstances in evidence were at least sufficient to make out a *prima facie* case of agency. ▮ However, this conclusion does not entirely dispose of appellant's contention that the court erred in sustaining said objections to the admissions of these conversations. In those instances when the court sustained the objections to questions propounded to appellant, she was asked to relate the conversation between her and these men whom she took to be agents of respondent. The sustaining of said objections was not, except on two occasions when the evidence sought to be elicited from the witness was of no materiality, followed by any offer to prove the substance of said conversations to be proven. The first of these instances when such an objection was sustained occurred when the appellant related her first visit to the property with her husband and Mr. Hammond. After stating that "the three of us went out to look at the property", the appellant was asked if anything was told her about the property at that time by Mr. Hammond. After an objection to this question was sustained no further question was asked her respecting this conversation nor was any offer made to prove any statement of Hammond's made during said conversation. The other instances where complaint is made that the objection was improperly sustained are similar to the one just related. There is nothing to indicate to this court whether the answer of the witness would have been favorable or unfavorable to appellant's case. It is true that the appellant herself was the witness and it might be contended that we would be safe in assuming that her answer would have been to her interest. But may we indulge in such an assumption? We might assume that the appellant would have testified to statements made by Mr. Hammond which she construed as a representation that the property was being sold, or offered for sale, absolutely free from any mineral reservations. But the court might disagree with the appellant in her construction of such statements, and give to them an entirely different meaning. We are, therefore, of the opinion that without any offer of proof of the substance, at least, of said conversation with Mr. Hammond,—and this conclusion applies to all other conversations which appellant attempted to prove, except in the two instances when offer of proof was made,—the appellant has failed to show that error was committed by the trial court

in the sustaining of said objections. As was said by this court in a case in which the facts were similar to the instant case, ''There was no offer to prove the facts sought to be elicited by it. [The question to which objection was sustained.] Therefore, it cannot be determined from the record whether there was any error or not, and as the appellant must show error, the ruling is no ground for reversal.'' (*Houghton* v. *Clarke,* 80 Cal. 417, 420 [22 Pac. 288].) The rule here announced has been invariably followed by the appellate courts of this state. (*Snowball* v. *Snowball,* 164 Cal. 476, 479 [129 Pac. 784]; *Whitelaw* v. *Whitelaw,* 122 Cal. App. 260, 263 [9 Pac. (2d) 874]; *Grandy* v. *Southern Pacific Co.,* 9 Cal. App. (2d) 441, 444 [49 Pac. (2d) 1127].) We would call attention particularly to the language of this court found on page 479 in the case of *Snowball* v. *Snowball, supra.*

■ Numerous other contentions are raised by the appellant in support of her appeal from the judgment against her. The most serious obstacle to appellant's success on this appeal is the finding of the trial court that at the time the deed to said real property was executed and delivered, the appellant knew it contained the reservations to the respondent of the oil, gas and mineral rights. In support of this finding the record shows that said deed actually contained said mineral reservations. This deed was recorded at the request of a title company with whom it was placed in escrow by the parties thereto pending the negotiation for the conveyance of said property. In the ordinary course of business this deed would be returned to appellant, the grantee therein. The next day after this deed was executed, appellant and her husband executed the trust deed to secure the note for the unpaid balance of the purchase price. This trust deed contained a description of said real property and also the reservation of the oil, gas, and mineral rights therein. Appellant testified that she did not read the trust deed but signed it at the request of Mr. Shields in the branch bank of the Bank of America at Santa Maria. Appellant claimed said real property as her separate property, and some three weeks after it was deeded to her, Mr. MacDonnell, her husband, executed in her favor a quitclaim deed to said property and delivered it to her. This deed contained a reservation of the mineral rights in said land ''as excepted in the deed to

Katherine MacDonnell, dated March 9, 1931 and filed for record March 28, 1931''. The deed thus referred to was the deed from respondent to appellant conveying said land subject to the oil, gas, and mineral rights. While appellant had this deed from her husband in her possession from its date to the date of trial, except during the time it was being recorded, she says she never read it nor knew that it contained said mineral reservations. In addition to the probative effect of these deeds, the record contains certain correspondence and transactions between the appellant and Mr. Marston and other officials of the California Lands, Inc., which in our opinion justified the trial court in finding that appellant knew of said mineral reservations at all times. In the first of these letters, written November 14, 1933, appellant writes Mr. Marston as follows: ''Mr. Marston is it possible for me to get the mineral oil rights released on property as I want to get a Federal Bank loan so I can take care of property as far as California Lands are concerned and make it easier for myself, give me an opportunity to put in crop and pump, etc. They will not give me a loan without oil rights released, so want to know what you will do about it. Please let me know at once.'' Mr. Marston answered the letter, stating that his company was unable to give up the mineral rights to the land ''except upon payment of a substantial sum''. Appellant then telegraphed Mr. Marston as to the price of mineral rights, who replied as follows: ''Not interested in selling oil and gas and mineral rights at present time. Our subrogation to Federal Land Bank will meet their requirements.'' This correspondence was continued between appellant and Mr. Marston and other officers of the California Lands, Inc., for almost eighteen months, during which time nineteen letters and telegrams passed between the parties, seven of which were sent by appellant, and in not one if any of these letters was any claim made that the mineral reservations were improperly inserted in the deed to appellant, or that she did not know that they were in the deed at the time of its execution and delivery. In fact, in her very first letter to Mr. Marston, she refers to ''these mineral oil rights'' as an accepted restriction upon her absolute ownership of said real property and asks that respondent release them. When her request was denied, she then offered to purchase the reserved rights. Her last letter in this correspondence was dated May 31, 1935. In this letter

she expressed her keen disappointment in the final decision of the Home Owners Loan Corporation in denying her application for a loan and asked for a modification of the terms of payment of her note given for the purchase of said land. In addition to this correspondence the record shows that on April 5, 1937, after foreclosure proceedings had been instituted on the trust deed against her property, she entered into an agreement with the respondent whereby she agreed to pay $500 on her indebtedness to respondent and to pay the balance in certain monthly payments. In pursuance of this agreement she paid respondent said sum of $500 and the respondent agreed "to cancel the present foreclosure action". Whether this agreement was carried out by the parties, the record does not disclose. During this long interval of time between November 14, 1933, the date of appellant's first letter to Mr. Marston, to April 5, 1937, when she agreed to pay $500 on her loan, and its terms were to be changed, the appellant made no claim that she did not know that the mineral rights were reserved in the deed to said land, but on the other hand, she dealt with respondent in respect to said rights as valid and existing exceptions to her complete ownership of said property. There is not one word of testimony in her entire evidence in explanation of her conduct in this respect. In fact, after the introduction of said correspondence and said agreement of April 5, 1937, the appellant did not appear as a witness in the case. The amended complaint was filed in this action on October 8, 1937, just six months after said agreement of April 5 was executed by appellant. The record fails to show just the date when this action was commenced. The date of its commencement was, of course, prior to October 8, 1937, when the amended complaint was filed. Therefore, less than six months intervened between the time when appellant executed the agreement of April 5, 1937, whereby she virtually recognized said deed with its mineral reservations as a valid conveyance and the time when she commenced this action to have it declared invalid by reason of the fraudulent insertion therein of these same mineral reservations. As we have stated, the appellant offered no word of explanation of this unusual conduct on her part. Her counsel in their brief make a feeble attempt to excuse her for not sooner asserting her claim that said reservations were fraudulently and without her knowledge inserted in said deed, by the statement that during all of the

time these negotiations were being carried on, she was in default in her payments on said promissory note and for that reason it was not to her interest to assume a belligerent attitude toward her creditor. This argument in the first place has no evidence to support it. If this were the reason that appellant remained quiescent during this long period, we would expect the appellant to have so stated to the court at the trial. Without doubt this same argument was made to the trial court, and rejected by it as the findings show. The trial court having, on the evidence before it, found that the appellant knew that said reservations were included in her deed at the date of its execution and delivery, and said evidence being sufficient to support the finding of the trial court, this court, even if it so desired, is without the power to disturb said finding.

The foregoing disposes of all necessary issues in the case, including the issue of fraud, for if the appellant knew and accepted said deed with the mineral reservations therein, there could be no fraud on the part of respondent in having the same made a part of its conveyance to appellant.

In view of what we have already said it is unnecessary to pass upon the findings of the court respecting the statute of limitations or laches.

The judgment is affirmed.

Gibson, J., Houser, J., Shenk, J., Carter, J., Edmonds, J., and Waste, C. J., concurred.