### MacDONNELL v. CAPITAL CO.

### CAPITAL CO. v. MacDONNELL.

No. 9854.

Circuit Court of Appeals, Ninth Circuit.
July 27, 1942.

Rehearing Denied Sept. 14, 1942.

Roy Daily, of North Sacramento, Cal., for Katherine MacDonnell.

Keyes & Erskine and Morse Erskine, both of San Francisco, Cal., for Capital Co. and others.

Before WILBUR, GARRECHT, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Appellant Katherine MacDonnell filed two separate actions in the court below respecting a parcel of real property located southwest of Santa Maria, California, known as the "Brass Ranch," and described as the Southeast Quarter of the Northwest Quarter of Section Twenty-eight, Township 10 North, Range 34 West, San Bernardino Meridian, containing forty acres, more or less. The first action stated was for damages for trespass, which named California Lands, Inc., as defendant; the second bill of complaint prayed specific performance of an alleged contract to sell the plaintiff the real estate above mentioned, and named the Corporation of America, the Bank of America National Trust and Savings Association, and California Lands, Inc., defendants. The cases were consolidated for trial, which was had to the court without a jury. The court below rendered an oral opinion, adjudging that the plaintiff take nothing by her suit for specific performance, and granting judgment in the sum of $8,078.82 as damages in the trespass action. The plaintiff appeals from the judgment entered in the consolidated causes and the defendant appeals from the judgment for damages rendered against it in the action for trespass.

The court below, in making its decisions, treated the two cases in the inverse order of filing and we, therefore, follow this plan, that the facts may appear in logical sequence. Because of the questions presented and the rulings of the trial court here involved, we deem it essential to set forth with unusual detail the allegations of the pleadings.

In support of the jurisdiction of the court below, the plaintiff, Katherine MacDonnell, alleged that she was a citizen and resident of the state of Oregon and that the named defendants, Bank of America, Corporation of America, and California Lands, Inc., were organized under the laws of the state of California, the state of Delaware, and the state of California, respectively; that prior to February 25, 1931, defendants were the owners of the "Brass

Ranch"; that on or about February 25, 1931, plaintiff paid James Glines, manager of the Santa Maria branch of the Bank of America (successor to the Bank of Italy), $350 and entered into a written contract, "by the terms of which the defendants granted to the plaintiff the right to buy all their right, title and interest" in said real estate for the sum of $7,000; that on or about March 17, 1931, the defendants reduced the purchase price to $6,000; that plaintiff paid the purchase price in installments, completing payment on or about May 27, 1938; that plaintiff performed on her part all of the conditions of the contracts and demanded a conveyance to her from the defendants of the premises in fee simple but defendants refused to do so; that the agreement of February 25, 1931, was signed by Frank Roemer, who did so at the request and in the presence of James Clines; that "defendants ought not to be admitted to say" Roemer was not acting on their behalf, because defendants accepted the $350 "down payment," sold plaintiff the "Brass Ranch," accepted all the money paid by plaintiff and, on or about March 9, 1931, recorded a deed conveying said premises to plaintiff, "but excepting therefrom 'all oil, gas and mineral rights.'" The plaintiff prayed that defendants be required to deliver to plaintiff a deed to the property, "in fee simple, without exception"; that the contracts be specifically performed; and that in the event the contracts cannot be specifically performed, plaintiff be awarded damages in the sum of $5,000,000.

The defendants answered, and, admitting the organization of the Bank of America and California Lands, Inc., under the laws of the state of California, alleged that the Corporation of America was also organized under the laws of said state. The answer went on to admit ownership in California Lands on February 25, 1931, of the property in question, and alleged that on February 28, 1931, California Lands entered into an agreement with plaintiff for the sale and purchase of said property "except the oil, gas and mineral rights contained therein," for the sum of $6,000; that on March 9, 1931, California Lands executed and delivered to plaintiff a deed to said property; that plaintiff paid to California Lands the sum of $700 on account of the purchase price of said property and executed a promissory note in favor of California Lands for the balance of $5,300, payable in installments; that contemporaneously there-

with plaintiff executed and delivered to Corporation of America, as trustee for California Lands, Inc., a deed of trust of the said real property, except the oil, gas and mineral rights therein, to secure payment of said promissory note; that the deed of trust was thereafter, on March 29, 1931, recorded in Santa Barbara County; that California Lands continued to own the note until it was paid in full; that plaintiff caused the deed to the property from California Lands to be recorded in the office of the Recorder of Santa Barbara County on or about March 28, 1931; that the sum of $6,000 was the fair and reasonable value of the real property, except the oil, gas, and mineral rights therein. Continuing, the answer alleged that California Lands agreed to sell to plaintiff said property, excepting therefrom the oil, gas, and mineral rights; that California Lands executed and delivered to plaintiff a deed thereto and the plaintiff at the same time executed and delivered to California Lands her note and deed of trust and thereafter made payments on account of principal and interest of said note; that in October, 1937, the plaintiff began to claim that said deed should not have reserved to California Lands the said oil, gas, and mineral rights; that California Lands denied the claim and asserted it was without right or foundation. As separate defenses, the defendants alleged that plaintiff's alleged cause of action was barred by the statutes of limitation, particularly Sections 318, 319, 337, subd. 1, and 343 of the Code of Civil Procedure of the State of California. The defendants further alleged that plaintiff was guilty of laches, and barred thereby, in that the deed from California Lands to plaintiff, containing the reservation in question, was delivered to plaintiff on March 9, 1931; that plaintiff knew of the reservation; that she neglected to assert her alleged right until October, 1937.

As another affirmative defense, the defendants allege that on or about June 28, 1937, the plaintiff commenced an action against California Lands in the Superior Court of the State of California in the county of Santa Barbara, joining two other defendants, who were, apparently nominal parties. In that state court action Katherine MacDonnell prayed that California Lands be required to execute to her a good and sufficient deed to the property "without exception of mineral rights"; that her title be quieted; that it be ad-

judged that the defendants had no estate or interest whatever in said land and premises and be debarred from asserting any such claim. The action resulted in a judgment for defendants, which was affirmed by the Supreme Court of the State of California on appeal. MacDonnell v. California Lands, Inc., 15 Cal.2d 344, 101 P.2d 479.

After an extended trial in which there was presented a great mass of evidence, both oral and documentary, the court below made findings of fact and conclusions of law. In substance, the District Court found that the jurisdictional facts existed; that California Lands was the owner of the property in question—the "Brass Ranch"—on February 28, 1931, and prior thereto; that on said date California Lands agreed to sell to the plaintiff said property, "except the oil, gas and mineral rights therein," and on March 9, 1931, executed its deed to said property, reserving to itself the oil, gas and mineral rights therein, which rights are owned by California Lands, Inc.; that for many months prior to February 28, 1931, neither the Bank of America nor Corporation of America had any right, title, or interest in or to the said real property or any oil, gas, or mineral rights therein; that the said Bank of America and Corporation of America had filed in the District Court an instrument disclaiming any right, title, or interest, etc. The District Court further found that on February 25, 1931, James Glines was manager of the Santa Maria branch of the Bank of America (Italy); that it was not true that the plaintiff paid to him $350 for the use and benefit of the defendants or any of them; that the plaintiff did not enter into a written contract with the defendants or any of them whereby the defendants granted to plaintiff the right to buy all the right, title, and interest of the defendants in the property for the sum of $7,000; that defendants did not by letter dated March 17, 1931, agree to reduce the purchase price of the property from $7000 to $6000; that on February 25, 1931, plaintiff paid $350 to Valley Motor Sales Company of Santa Maria, and said company, by Frank Roemer, its manager, executed and delivered to plaintiff a receipt for $350 on account of the purchase price of the Brass Ranch, which Valley Motor Sales Company proposed to sell to said plaintiff on a contract to be thereafter executed by the plaintiff and Valley Motor Sales Company; that defendants had not authorized Valley Motor Sales Company or Frank Roemer to enter into any contract, in behalf of any of them, with the plaintiff with regard to said property; that it is not true that Frank Roemer signed the aforesaid receipt in the presence or at the request of James Glines; that neither Valley Motor Sales Company nor Frank Roemer paid to defendants the $350, the sum paid by plaintiff to Valley Motor Sales Company on February 25, 1931; that on February 28, 1931, Frank Roemer, acting on behalf of Valley Motor Sales Company, repaid the $350 to plaintiff. The court further found that on or about February 28, 1931, California Lands, Inc., entered into an agreement with plaintiff whereby it agreed to sell to plaintiff the Brass Ranch, except the oil, gas, and mineral rights contained therein, for the sum of $6,000, payable $700 down and the balance in installments; that pursuant to said agreement, California Lands, on or about March 9, 1931, executed and delivered to plaintiff a deed to said real property, which was recorded in the County on or about March 28, 1931; that plaintiff paid to California Lands the sum of $700 and executed her note to California Lands for the balance of the purchase price of $6,000; that contemporaneously therewith plaintiff executed and delivered to Corporation of America, as trustee for California Lands, a deed of trust to said property, except the oil, gas, and mineral rights therein, to secure her promissory note; that the deed of trust was recorded in Santa Barbara County; that California Lands, from the date of its execution, until paid in full, continued to own the promissory note. It was also found by the court that the indebtedness evidenced by the promissory note was extinguished on May 28, 1938, by payment to California Lands of the sum of $3296.70, the balance due; that at the time California Lands executed its deed to the property, $6,000 was the fair and reasonable value thereof, excepting therefrom the said oil, gas, and mineral rights; that commencing in the summer of 1937, after discovery of oil in land in the vicinity of the said real property, plaintiff began to claim that the deed executed to plaintiff by California Lands should not have reserved the mineral rights to the grantor and that she was the owner of said mineral rights; that California Lands denied this claim as without foundation. The court found that a

map, called the Jesson map, introduced by defendants, delineated the true boundaries of the property sold by defendants, and that the Martin map, introduced by plaintiff, was not accurate and did not show the true legal boundaries of the quarter quarter section; that at least twenty-five years prior to the trial the then owners of the Brass Ranch and the owners of the surrounding land agreed upon the boundaries; that the east line of the Brass Ranch was bounded by the westerly line of Lower Orcut Road, the south and west lines by rows of eucalyptus trees and fence, and the north line by the Betteravia Lateral road; that these boundaries constitute the true boundary lines of the property. Parenthetically, we might here state that the Martin map purports to show that the true location of the quarter quarter section is some one hundred feet east and one hundred feet south of the theretofore accepted boundaries, that is, a strip of land on the west side and a strip on the north side of the property are allegedly not a part thereof and a strip added to the east and a strip added to the south, not theretofore considered as a part thereof are actually a part. The contention of plaintiff in this regard seems to be that notwithstanding California Lands might have effectually reserved to itself the mineral rights to the quarter quarter section conveyed, the described property was not located precisely within the accepted lines of the Brass Ranch and, therefore, the strips of land on the north side and on the west side were acquired by her by adverse possession and to which the reservation of mineral rights did not apply. She would, if this contention be upheld, be enabled to extract the minerals from beneath the surface of these two strips of land.

. The findings of the court sustained the defenses of the statute of limitations and the court held the plaintiff barred thereby. The District Court also found that the judgment of the Superior Court of the State of California for the County of Santa Barbara (affirmed by the state Supreme Court, 15 Cal.2d 344, 101 P.2d 479) was a bar to the maintenance by plaintiff of the instant suit.

In this action, the District Court concluded that plaintiff was the owner of the surface of the said real property, but did not have, nor never had, any right, title, or interest in or to the oil, gas, or mineral rights therein; that California Lands (Capital Company) was the owner of the said mineral rights in said property; that plaintiff be debarred from asserting any claim to said mineral rights; and that she take nothing by her complaint.

■ The case was tried to the court sitting without jury; the evidence was conflicting; the District Court made its findings of fact, as outlined above, on this conflicting evidence. Under the Federal Rules of Civil Procedure, rule No. 52a, 28 U.S.C.A. following section 723c, these findings may not be set aside unless "clearly erroneous," and due regard must "be given to the opportunity of the trial court to judge of the credibility of the witnesses."

At this point it may be stated that the appellee contends the designation of this suit by appellant as a "specific performance action," is a misnomer. Appellee insists that it was an action to establish title to the mineral rights, an action to reform a deed. The reason for the conflict is obvious: If the action be one to establish title to the mineral rights based upon a contract allegedly entered into in February, 1933, it would be barred by the statute of limitations; if it be for specific performance, the appellant conceives that the action is not barred because the statute would begin to run on or about May 27, 1938, the date of completion of payment under her deed of trust and that the plaintiff only then came into a position to demand the mineral rights be deeded to her. The trial court found that "The cause of action alleged by the plaintiff's complaint is barred by the" statutes of limitation of California. Sections 318, 337, subd. 1, 338, subd. 4, and 343, Code of Civil Procedure of the State of California. In her "specifications of error," the appellant charges the trial court erred in entering the above finding, asserting the plea of statute of limitations was an affirmative defense upon which no evidence was introduced; that the last payment was made May 27, 1938; that the complaint was filed less than two years thereafter; and that the trial court denied the defendants' motion to dismiss based upon that ground. Unless the appellant successfully could demonstrate the finding was clearly wrong, it must stand. No such showing has been made.

■ The trial court found, and there is evidence to the effect that the agreement

to sell was entered into February 28, 1931, and the land was conveyed from California Lands, Inc., to appellant by deed dated March 9, 1931, and recorded March 28, 1931. This deed excepted the oil, gas, and mineral rights from the conveyance and reserved such rights in the grantor. There was the contract and its execution. The promissory note and the deed of trust were not part of the original agreement; they were separate from the agreement to sell, which was performed by the giving of the deed. This transaction is not to be confused with an agreement to sell real estate upon payment of installments—an executory contract—whereby the deed is to be delivered upon completion of the installment contract payments. The agreement to sell was performed or not performed, as the case may be, upon conveyance of the deed and the statute began to run on that date, at least so far as concerns any cause of action asserted here. Clearly, then, the plaintiff's claim in this action was barred by the statute of limitations, no matter by what name plaintiff chooses to entitle her complaint.

Appellee urges that the true nature of the present action is one to reform the deed, rather than sounding in specific performance. This is not without merit, for, as the court found, the deed was given March 9, 1931, and that deed to plaintiff, as recorded, excepted the oil, gas, and mineral rights from the conveyance. What Mrs. MacDonnell is really contending, in essence, as she alleges, is that the deed did not conform to her understanding of the estate to be conveyed to her as a result of the agreement of February 28, 1931. But the insurmountable difficulty with this contention is that the agreement was entered into, and the conveyance was made, nearly nine years before this suit was filed. Besides, Mrs. MacDonnell was aware as early as November, 1933, that the gas, oil, and mineral rights were reserved to the grantor and excepted from the deed, and she made no complaint, nor did she claim ownership thereof. Moreover, the deeds exchanged in executing the deed of trust in March, 1931, as well as the quit-claim deed given Mrs. MacDonnell by her husband, A. J. MacDonnell, in the same month, each contained the same exception of said oil, gas, and mineral rights. There is no question of fraud because the same was not pleaded and was expressly disavowed by appellant's counsel in open court.

The question of res judicata was first raised by the defendant in its answer and, thereafter, by its motion for summary judgment. The trial court denied a motion for summary judgment made shortly after the commencement of the trial, thereafter vacated the order; and following close of plaintiff's case defendants moved to dismiss, which the court also denied. The original motion for summary judgment does not appear in the record, nor are the grounds upon which it was based set forth. The latter motion to dismiss does not appear to urge res judicata as a specific ground, although it does refer to the Santa Barbara action. In putting in its case, during the testimony of witness Woodruff the defendants introduced the judgment roll in the Santa Barbara action (heretofore mentioned in connection with defendants' answer), and plaintiff attempted to introduce the transcript of record of such action. Objection to the latter was sustained by the court and the following took place:

"Mr. Daily: As I understand it, this was offered on the plea of res judicata.

"The Court: I have already denied the plea of res judicata. In denying his motion for summary judgment I denied his plea of res judicata.

"Mr. Erskine: * * * I did not understand the Court's denial of that motion to be a finding on the merits so far as that plea is concerned in this particular suit. It was just a denial of a motion for summary judgment.

"The Court: I thought it included that, because that was the only place where this was raised, isn't that correct,—res judicata?

"Mr. Erskine: It was raised in our answer as well, and I am introducing the judgment roll at this time in support.

"The Court: Well, you may so regard it if you wish. I see no objection to it. But in denying the motion for summary judgment, of course, I denied your contention that this judgment in the Santa Barbara case was res judicata. My principal reason for doing that is because the parties are not identical. Now, it may be that this judgment may have some weight, but that weight would be in the nature of an estoppel. I do not know hardly how to describe it, but it may have some weight in this case. It may be in the final judg-

ment of the case I will give it consideration.

"Mr. Erskine: The point that was in my mind, just to state it briefly, was this: that the motion for summary judgment is based upon an assumption that the facts are in dispute. Now, if the facts in this case show that the only contract which was made in the case was a contract with California Lands and no other contract was made, then if that is the showing in this case, then the judgment would have the effect of res judicata.

"The Court: It might. It might have the effect, but strictly speaking, I do not think that the Santa Barbara action is res judicata. Strictly speaking—I am in doubt about it."

The trial court "in the final judgment of the case" did not, in so many words, declare the Santa Barbara judgment res judicata, but it did find "The said judgment and decree bars and estops the plaintiff from maintaining" this suit, which is to the same practical effect. Was this finding of the trial court "clearly erroneous"?

The parties to both suits are the same; no one will dispute the common plaintiff. The defendants in the Santa Barbara case were California Lands, Inc., and two Does, afterwards identified, which latter were simply nominal parties (15 Cal.2d 344, 346, 101 P.2d 479), not real parties in interest. The defendants here named, California Lands, Inc., (merged into Capital Company March 3, 1931, and defendant, by court order, thereafter designated as Capital Company), Bank of America, and Corporation of America, were not all real parties. The trial court found, and there is evidence to support such finding, that the latter two named had no right, title, or interest in or to the property in question, or in or to the oil, gas, or mineral rights therein, on, or prior to, the date of the making of the contract between MacDonnell and California Lands; that Bank of America and Corporation of America filed in said court an instrument disclaiming any such right, title, or interest. This, therefore, leaves but one real defendant, California Lands, Inc., and so we must conclude the parties are identical. As to the identity of the issue, we must inquire into the relief sought and the result to the parties in the event of judgment or decree. We have heretofore, in the statement of the pleadings, set forth the basic pleaded facts, the prayers and the defenses raised; we have

also stated the substance of the trial court's finding on the question. It clearly appears that essentially the same relief was sought both in the Santa Barbara action and in the instant suit, and were plaintiff to prevail in either case, she would have accomplished precisely the same result—been declared the owner in fee simple, without exception or reservation, of the property described.

In MacDonnell v. California Lands, Inc., 15 Cal.2d 344, 349, 352, 101 P.2d 479, 482, the supreme court of the state of California said:

" * * * The most serious obstacle to appellant's success on this appeal is the finding of the trial court that at the time the deed to said real property was executed and delivered, the appellant knew it contained the reservations to the respondent of the oil, gas and mineral rights. In support of this finding the record shows that said deed actually contained said mineral reservations.

" * * * The trial court having, on the evidence before it, found that the appellant knew that said reservations were included in her deed at the date of its execution and delivery, and said evidence being sufficient to support the finding of the trial court, this court, even if it so desired, is without the power to disturb said finding."

Referring to the complaint in that action, the supreme court of the state of California had this to say (15 Cal.2d page 345, 101 P.2d page 480): " * * * In the prayer to said complaint, plaintiff asked that defendant be required to execute to her a good and sufficient deed of conveyance of all of said property without exception of mineral rights, that her title be quieted except as to said trust deed, and that it be determined that defendant has no estate or interest in said real property. * * *"

The precedents which foreclose a reexamination of the vital issue of plaintiff's alleged cause of action are many and authoritative. The Code of Civil Procedure of California, Section 1908, declares that a "judgment or order is, in respect to the matter directly adjudged, conclusive between the parties * * *." See, also, Section 1909 and Section 1962, subd. 6, of the same Code. On this subject the supreme court of the state of California has said: "Appellants * * * seem to contend that an issue heard and determined in a former case is binding only as to such grounds

supporting or opposing said issue as were actually urged and litigated. But an issue may not be thus split into pieces. If it has been determined in a former action, it is binding notwithstanding the parties litigant may have omitted to urge for or against it matters which, if urged, would have produced an opposite result. In other words, when an issue has been litigated all inquiry respecting the same is foreclosed, not only as to matters heard but also as to matters that could have been heard in support of or in opposition thereto. * * *" Price v. Sixth Dist. Agricultural Ass'n, 201 Cal. 502, 511, 258 P. 387, 390.

Again, the same court, in Nelson v. Lake Hemet Water Co., 212 Cal. 94, 99, 297 P. 914, 916, voiced the same rule in the following words: "* * * It is therefore not germane to review the events transpiring prior to this adjudication, as all questions which could have been raised prior to the judgment are conclusively deemed to have been presented, and all proof that could have been presented is conclusively presumed to have been received. * * *"

■ Another expression of said court is to be found in Lamb v. Wahlenmaier, 144 Cal. 91, 92, 93, 77 P. 765, 766, 103 Am.St. Rep. 66, where it is said: "* * * The estoppel thus created is not limited to an action which is identical in form with the former action, or where the same parties are plaintiff and defendant in each of the actions, but may be invoked whenever in the second action the parties are in privity with the parties to the first action, and the same issue is presented for determination which was determined in the former action. As between the parties to the action, the judgment therein is an estoppel as to all matters which are actually and necessarily included in the judgment. * * *"

See, also, Sullivan v. Triunfo Mining Co., 39 Cal. 459, 465; Bernhard v. Bank of America, 19 Cal.2d 807, 122 P.2d 892.

This rule has received the recognition and support of the Supreme Court of the United States,[1] this court,[2] the text writers,[3] and the encyclopedias.[4]

■ It follows from the facts before us and the authorities on the subject that the judgment in the state court action is a bar to the plaintiff's cause of action in the instant case, and that the court below correctly and properly entered judgment in favor of the defendants herein.

■ In view of the grounds upon which we base our decision it is wholly unnecessary and, as well, improper for us to notice or discuss the many questions urged and argued by appellant in her briefs. A large portion of appellant's brief is devoted to contentions and arguments respecting boundaries, but this question had no place in the trial under the pleadings. Moreover, as to the questions raised relative to the admission or exclusion of evidence, we point out that the cause was tried to the court without jury, and under the circumstances such questions become relatively ·unimportant, the rules of evidence relating to admission and exclusion being intended primarily for the purpose of withdrawing from the jury matter which might improperly sway the verdict, and not for the trial judge, who is presumed to act only upon proper evidence.

The judgment of the court below in the specific performance action is affirmed.

### As to the Award for Damages

In her complaint in the trespass action Mrs. MacDonnell alleged the jurisdictional facts; that she was the owner in possession of the Southeast Quarter of the Northeast Quarter of Section 28, etc.; that defendant (California Lands, Inc.), within three years next preceding commencement of the action, forcibly entered and trespassed upon plaintiff's property. The complaint then went on to allege a series of specific acts of trespass and damage, and concluded with a prayer for damages in the total

[1] Grubb v. Public Utilities Comm., 281 U.S. 470, 479, 50 S.Ct. 374, 74 L.Ed. 972; Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 321, 47 S.Ct. 600, 71 L.Ed. 1069; Fayerweather v. Ritch, 195 U.S. 276, 299, 300, 25 S.Ct. 58, 49 L.Ed. 193; Southern Pac. R. R. Co. v. United States, 168 U.S. 1, 48, 49, 18 S.Ct. 18, 42 L.Ed. 355.

[2] Dern v. Tanner, 9 Cir., 96 F.2d 401, 403, 404; Schodde v. United States, 9 Cir., 69 F.2d 866, 869, 870.

[3] 2 Freeman on Judgments, § 627, p. 1321, § 671, p. 1415, § 672, pp. 1418–1419, § 674, p. 1421, § 677, p. 1432; 2 Black on Judgments, § 534, p. 808, § 609, p. 925, § 614, pp. 937–938.

[4] 30 Am.Jur., Judgments, § 161, p. 908, § 174, p. 918, § 179, p. 923, § 225, p. 957; 34 C. J., Judgments, § 1154, p. 742, § 1156, p. 745, § 1235, p. 817; 15 Cal.Jur., Judgments, § 166, p. 97, § 183, p. 124, § 188, p. 134, § 193, p. 144, § 205, p. 159.

amount of $57,642. California Lands answered, alleging it conveyed the premises to plaintiff, reserving to itself the oil, gas, and mineral rights therein; that plaintiff had not then, nor ever had any interest in said oil, gas, and mineral rights; that there was pending in the state court in Santa Barbara County an action wherein Mac-Donnell was plaintiff and California Lands defendant, and in which action plaintiff claimed ownership of said mineral rights. The answer further alleged that in said state court action defendant California Lands alleged that it was owner of the oil, gas, and mineral rights in said property; that it was entitled to enter upon said real property, to drill wells thereon, to produce and take oil, gas, etc.; that in said action a decree and judgment entered in its favor. The answer in the court below admitted certain acts upon the real property in question "pursuant to said decree" and denied the remainder of the alleged specific acts of trespass for which plaintiff prayed damages. As affirmative defenses in the court below defendant California Lands alleged the pendency of the state court action, and the judgment therein; that execution on said judgment was not stayed; that all of the alleged acts of trespass were pursuant to and in accordance with said judgment; and that an appeal, prosecuted by the plaintiff, was then pending. Parenthetically, we state that the appeal was disposed of, as heretofore referred to, by the supreme court of the state of California on April 12, 1940, which affirmed the judgment in favor of California Lands, Inc.

In his oral opinion the trial judge, referring to the action for trespass, stated: " * * * In this action I think the plaintiff is entitled to recover something. Defendant has entered upon her land, drilled a well, which is in operation, built roads and storage tanks, and dug sumps. This development occupies about four acres of the tract. President of defendant company admits that it is proposed to fully develop the property in an endeavor to bring in five producing wells. Such development will destroy whatever value the land has for agricultural purposes. Evidence offered by plaintiff upon the question of damages is meager and unsatisfactory, and damages would have been difficult of ascertainment had it not been for the offer made by defendant at the close of the trial. Defendant renewed an offer heretofore made to plaintiff to pay to her in settlement of her claim for damages the amount of money she paid for the property, permitting her to retain the dwelling house and curtilage, reserving to itself, however, all sub-surface rights. Based upon this generous offer, I find that the plaintiff is entitled to recover damages from defendant in the sum of $8,078.82, for which sum I give her judgment with costs."

The lower court found that the jurisdictional facts existed; that the conveyance from California Lands to plaintiff excepted the oil, gas, and mineral rights; that defendant was the owner thereof; that the judgment in the state court action had become final and by said judgment California Lands was entitled to enter upon said real property, to drill wells thereon, to take oil therefrom, to store the same thereon, to construct and maintain such structures as "may be reasonably necessary for the said purposes," to occupy and have right of ingress and egress to and from said property; that defendant entered upon the said property and exercised the above privileges; that all of said work was in accordance with good oil field practice and was reasonably necessary to the drilling of said well and the production of oil therefrom and the storage and transportation of such oil; that in doing said work California Lands did not use any more of said property than was reasonably necessary for the said purposes; that in the course of said work certain specific things were done (enumerated by the court); that plaintiff alleged the acts set forth damaged plaintiff; that plaintiff failed to introduce satisfactory evidence of such damages; that plaintiff was not damaged by such acts except as thereafter set forth. The court further found that under the state court judgment California Lands had and will continue to have the right to enter upon the real property and perform said acts, and other acts as may be reasonably necessary to a realization of its mineral rights, "but that under the law California Lands Inc. upon exercising the said right became obligated to pay whatever damages the plaintiff may have suffered or may hereafter suffer by reason thereof." It was further found that California Lands intends to drill four additional wells on the property, but may or may not do so, depending upon the market; that the well and tanks, etc., now in existence occupy

three and seven-tenths acres of the said real property; that the contemplated wells, sumps, and roads, if constructed, will occupy additional surface; that when the five wells are completed, the real property will no longer have any value as agricultural land; that California Lands, prior to the trial, without admitting any legal obligation, offered by way of settlement to pay to plaintiff the sum of $8,078.82 (the total of principal and interest theretofore paid by plaintiff on her note) and to allow plaintiff to retain title and to use the house and the surface of the surrounding grounds; that this offer was made on condition that plaintiff convey clear title to the surface of all the property except the house and surface of the grounds surrounding, waive and surrender to California Lands all claim to mineral rights, not appeal from any judgment in favor of California Lands in the specific performance action (in the event such was the judgment entered), dismiss with prejudice an action then pending in Santa Barbara County in which MacDonnell was seeking to establish title to strips of land on the west and south sides of the property (heretofore referred to), and execute a release to the defendants of all demands and claims against them; that plaintiff be allowed the sum of $8078.82 as payment for all damages "plaintiff has suffered or may hereafter suffer. * * *"

Judgment was entered against California Lands, Inc., in this action in accordance with the findings, and both plaintiff and defendant Capital Company (successor to California Lands) appeal. Capital Company urges, in support of its appeal, that all the essential facts were found in favor of California Lands and the trial court should be directed to enter judgment, in accordance with these findings, that Mrs. MacDonnell recover nothing from California Lands. Mrs. MacDonnell complains that the judgment should be set aside because insufficient and inadequate damages were allowed and because the court allowed the damages for future as well as past trespass, it being Mrs. MacDonnell's contention in this respect that the court was without power to deprive her of the right to collect damages for any future acts of trespass.

■ The state of the law in California requires rather summary disposition of the appeal in the trespass action. Section 1069 of the Civil Code of California provides: "A grant is to be interpreted in favor of the grantee, except that a reservation in any grant * * * is to be interpreted in favor of the grantor." There is, apparently, complete unanimity amongst the various jurisdictions as regards the rule that an expressed mineral reservation contained in a deed carries with it, by necessary implication, the right to remove such minerals (including gas and oil) by the usual or customary methods of mining and thus reduce them to possession even though the surface ground may be wholly destroyed as a result thereof. 40 C.J. Mines and Minerals, § 571, p. 984, § 678, p. 1061; 48 L.R.A.,N.S., 883, note; 36 Am.Jur, Mines and Minerals, § 177, p. 402. The case of Yuba Investment Co. v. Yuba Consolidated Gold Fields, 184 Cal. 469, 479–481, 194 P. 19, has established that rule as a part of the law of California. See, also, the very recent case Trklja v. Keys, Cal. App., 121 P.2d 54, wherein the rule is reiterated.

■ The opinion and findings of the trial court indicate convincingly that it was well advised as to the law governing the case. We are satisfied that the reservation of the mineral rights in the deed from California Lands to Mrs. MacDonnell gave it the right to enter the premises and to remove the minerals in a manner consistent with proper oil field practice. The trial court found that the appellee had conformed to that practice up to the time of trial. It is unfortunate that the plaintiff should find herself in a position where she is unable to recover damages for being deprived, by the dominant tenement, of the use of the greater part of the land which she purchased. But, such is the law in California. This hardship was apparent to the trial judge and realized by the defendant, which, by way of an offer in settlement made prior to the trial, tendered a sum of money equal to that which plaintiff had paid for the property and also to permit plaintiff to retain surface title to the house and surrounding grounds. This was not accepted.

In the controversy over the legal aspects of the case the proof upon the question of damages was slighted and obscured; the trial court so stated. Assuming that all parties would accept the judgment, the court awarded to plaintiff what had been offered by defendant in settlement for all damages, past, present, and future. The apparent fairness of the offer under the

circumstances as disclosed, together with a full realization of the unhappy situation in which the law left the plaintiff, clearly influenced the decision of the court. But the plaintiff declined to accept the judgment and by the appeal set at nought the Solomonian pronouncement of the learned trial judge. Under the law as set out above, we are required to set aside this part of the judgment.

That part of the judgment in favor of Katherine MacDonnell for damages allegedly suffered prior to the trial of this action is reversed. That portion of the judgment denying plaintiff relief in her action for specific performance is affirmed.