[S. F. No. 16776. In Bank. Apr. 1, 1943.]

AURELIA FERRONI, Plaintiff and Appellant, v. PACIFIC FINANCE CORPORATION OF CALIFORNIA (a Corporation), Defendant and Appellant; JOHN T. McCONNVILLE et al., Respondents.

SERAFINO FERRONI et al., Plaintiffs and Appellants, v. PACIFIC FINANCE CORPORATION OF CALIFORNIA (a Corporation), Defendant and Appellant; JOHN T. McCONNVILLE et al., Respondents.

774

Dinkelspiel & Dinkelspiel and Alfred Del Carlo for Plaintiffs and Appellants.

O'Connor, Neubarth & Moran and 'Harold H. Cohn for Defendant and Appellant.

Daniel J. O'Brien, Jr., and R. H. Cormany for Respondents.

CARTER, J.—The action of plaintiff Aurelia Ferroni against defendants, Pacific Finance Corporation of California, a corporation, Pacheco and Geis, a partnership, doing business under the name of Pacific Motor Sales Company, and McConnville, was consolidated for trial with an action by plaintiffs Serafino Ferroni and Julia Ferroni, against the same defendants. The action arose out of injuries and death resulting from the negligent operation of an automobile by McConnville on November 3, 1939. The trial court sitting without a jury gave judgment in favor of plaintiffs against defendants McConnville and Pacific Finance Corporation of California, but against plaintiffs as to the defendant partnership. McConnville has not appealed, but Pacific Finance Corporation of California has appealed and is referred to herein as appellant. Plaintiffs appeal from the judgment against them as to defendant partnership asserting that if their judgment against appellant is reversed they should have judgment against the partnership.

No issue of negligence, contributory negligence or damages is presented. The question involved is the liability of appellant or the partnership or both, such liability, if any, depending upon the ownership of the automobile at the time of the accident under section 402 of the Vehicle Code imposing liability on the owner of a motor vehicle for the negligence of a person operating it with his consent.

Apparently on May 9, 1939, the car in question was in the possession of a Mr. Brazil, who had purchased it from a Mr. Daniels, a dealer. According to the records of the Department of Motor Vehicles, Brazil was the registered owner and the Bank of America National Trust & Savings Association was the legal owner. On October 31, 1939, the partnership, a dealer in used cars, purchased the car from Daniels and received possession of it. Neither the certificates of legal or registered ownership were delivered to it at that time, but insofar as the records of the department show they were in the names above-mentioned. The following events occurred on November 2, 1939, the day before the accident. An independent automobile salesman, Houser, advised the partner-

ship that he had a purchaser for a car. He demonstrated the car in question and informed the partnership that he had sold it to defendant McConnville and that appellant was "handling the deal," that is, financing the purchase. McConnville and one of the partners signed a purchase order on the partnership's forms in which it was recited that of the purchase price of $310, $85 had been paid by McConnville to appellant; that the purchase price was to be financed by appellant; and that "It is understood and agreed that the Title of Ownership of car as above described does not pass to me until the final cash payment is made." McConnville was given possession of the car. On the same day, but prior to the foregoing, Houser and McConnville had called on appellant, and it had prepared a conditional sale contract of the car in which Geis, one of the partners was named seller and McConnville, buyer. It received the down payment on the car, and the contract was signed by McConnville. The employee of the appellant signed Geis' name to an assignment of the contract to it. The partnership then obtained from Daniels the certificates of legal and registered ownership endorsed by Brazil and the legal owner and delivered them to appellant, receiving a check for $319.30 for the car. The accident occurred the next day. The certificates of registered and legal ownership did not reach the Motor Vehicle Department until November 9, 1939, when the car was placed in the name of McConnville as registered owner and appellant as legal owner.

In approaching the problem presented by this appeal it should first be observed that sections 402 and 177 of the Vehicle Code have been construed as providing that the conditional vendor of an automobile is liable within the amounts stated in the former section for the operation of such automobile with his consent by his conditional vendee in a negligent manner, where he delivers possession of the car to the vendee and fails to comply with section 177 with reference to giving notice of the transfer prior to the occurrence of the accident. (*Guillot* v. *Hagman*, 30 Cal.App.2d 582 [86 P.2d 865]; *Bunch* v. *Kin*, 2 Cal.App.2d 81 [37 P.2d 744]; *Helmuth* v. *Frame*, 46 Cal.App.2d 372 [115 P.2d 846].) Appellant questions the soundness of those cases, but a hearing by this court was denied in all of them and we are not inclined to disapprove them. In the instant action there is no question but that the car was sold on conditional sale contract and that McConnville was the conditional vendee, and as such he was in possession of the car and using it with the consent of

the owner at the time of the accident. Nor can it be doubted that there was not an immediate notification to the Motor Vehicle Department by the conditional vendor of the transfer. (See *Guillot* v. *Hagman, supra.*) The accident occurred the day following the execution of the conditional sale contract; the circumstance with relation to the transfer had not changed since the transfer, and the department was not notified until six days thereafter. Therefore, the conditional vendor, whoever he was, would be liable to plaintiffs because he was the owner within the meaning of section 402 of the Vehicle Code, and was not exempted from its terms by subdivision (f) thereof. ■ This brings us to the question of the identity of the conditional vendor, because under the circumstances he must be considered the owner of the car at the time of the accident.

Appellant attacks the trial court's finding that it was the owner at the time of the accident as being unsupported by the evidence. The merit of that contention, as we have seen, in turn depends upon the identity of the conditional vendor of the car. Viewing that question without regard to the assignment on November 2, 1939, of the conditional sale contract by appellant to itself, but purporting to act for the partnership, there is sufficient evidence to support the finding that appellant was the conditional vendor and therefore, the owner at the time of the accident. The following factors justify such an inference. Houser, the independent salesman, took the car and McConnville, the purchaser, to the appellant without the knowledge of the partnership. There appellant examined and approved the credit of McConnville and had McConnville sign the conditional sale contract. It received the down payment of $85 required under the contract. McConnville and Houser left with the car and returned to the partnership's place of business and informed the partnership that the car had been sold. The partnership called appellant and asked if the contract had been signed. One of the partners then obtained the certificates of legal and registered ownership from Daniels, and delivered them to appellant ''so he could get the check from'' appellant. He received a check for $319.20. Appellant paid $5 to Houser for his services. (The partnership paid him $35.) It is true that the contract named Geis, one of the partners, as vendor, but the partners testified that that was done without their knowledge or consent. It may justifiably be inferred that the contract was in fact that of appellant although it used the name of Geis as vendor. One

who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of the agency when he enters into a written contract in the name of his principal without believing in good faith that he has authority to do so. (Civ.Code, sec. 2343; *Nichols G. & M. Co.* v. *Jersey Farm D. Co.*, 134 Cal.App. 126 [24 P.2d 925].)

Furthermore, it may be inferred from the above circumstances that the partnership sold the automobile to the appellant which in turn sold it to McConnville, thus making appellant in truth the owner of the vehicle. ▮ An owner as contemplated by section 402 may be an actual owner even though he has not complied with the formalities of the Vehicle Code with reference to transfer of title. (*Helmuth* v. *Frame, supra; Schmidt* v. *C. I. T. Corporation,* 14 Cal.App.2d 92 [57 P.2d 1016].)

▮ However, in the instant action, the appellant in the course of the examination of one of its employees, offered to prove that the course of business dealings between it and the partnership were the same as in the instant case, and establish that appellant was authorized by the partnership to execute conditional contracts of sale on behalf of the partnership. That offer was refused. Aside from that offer there is evidence in the record that would have supported appellant's theory that the partnership was the conditional vendor or the owner of the car rather than appellant at the time of the accident. It will be recalled that the partnership and McConnville signed the partnership's sale order in which it was recited that $85 was to be paid down; that the purchase was to be "financed" by appellant, and that the title was to be retained by the vendor; that negotiations were had with the partnership, Houser and McConnville; that the partnership had possession of the car for sale in its place of business; that it was a dealer in used cars and appellant was a finance company; (customarily automobile finance companies deal only in financing rather than the purchase and sale of cars); that the partnership gave Houser a check for $35 on which was marked "Com.," meaning commission; that partner Pacheco testified that "Houser took him (McConnville) to a finance company, and had the deal *financed*"; and that appellant assigned the contract in Geis's name as assignee to itself. If appellant were the vendor the assignment would have been meaningless. There are also other factors. In the light of those circumstances it was prejudicial error to refuse to receive the offered proof. If that proof had disclosed, contrary

to the partner's testimony, that appellant was authorized to make the conditional sale contract in the partnership's name as principal and the vendor, which was done by appellant, the contract would be between the partnership and McConnville, the partnership would be the owner as well as the vendor. Appellant would be neither. It would be merely the agent of the partnership, and such evidence might have resulted in a judgment against the partnership but in favor of appellant. The delivery of the possession of the car to McConnville by appellant would have been a delivery by the partnership, inasmuch as it was acting as the latter's agent.

Unquestionably, under the circumstances here present, evidence of a prior course of dealing between appellant and the partnership in similar transactions would be relevant on the question of an agent-principal relationship between them, and that appellant was authorized as such to make the contract on behalf of the partnership. An implied agency relationship may arise from the words and conduct of the parties and the circumstances of the particular case. (*Smith* v. *Schuttpelz*, 1 Cal.2d 158 [33 P.2d 836]; *Bergtholdt* v. *Porter Bros. Co.*, 114 Cal. 681 [46 P. 733]; *Brown* v. *Spencer*, 163 Cal. 589 [126 P. 493]; *MacDonnell* v. *California Lands Inc.*, 15 Cal.2d 344 [101 P.2d 479]; *Burgess* v. *Security-First Nat. Bank*, 44 Cal.App.2d 808 [113 P.2d 298]; 1 Cal.Jur. 746; 2 C.J.S. Agency, sec. 23.)

Finally, it is contended that in any event appellant was the owner of the automobile by reason of the assignment to it of the conditional sale contract on the same day that the other transactions took place; that therefore, no prejudice was suffered by the refusal of appellant's offered proof of agency. The assignment was made by appellant in Geis' name. If the evidence established to the satisfaction of the trial court that appellant was acting merely as the partnership's agent, the question is merely one of whether an assignee of the conditional vendor of a conditional sale contract is liable for the negligent operation of the car by the conditional vendee under section 402 of the Vehicle Code where proper notice is not given. That is true because under those circumstances the partnership would be the conditional vendor, McConnville the conditional vendee, and appellant merely the assignee of the vendor. Any delivery of the possession of the car to the vendee by appellant would be in fact a delivery by the partnership, appellant's principal. An assignee of a conditional vendor of a conditional sale contract of a vehicle, is

not answerable under section 402 of the Vehicle Code for the negligent operation of the vehicle by the conditional vendee. That follows from the basis of the liability of the conditional vendor under that section. He is liable, and does not fall within the exclusion provision thereof when he fails to comply with section 177 of the Vehicle Code requiring notice of transfer of the car. That section states that when the owner of a vehicle sells title or interest in the vehicle *and delivers possession thereof,* the department must be notified immediately. Ordinarily the conditional vendor delivers possession of the car to the vendee, but the assignee does not. When the assignment is made, delivery of possession to the conditional vendee has already been completed.

It follows from the foregoing that the judgment must be reversed insofar as it determines that appellant is liable as the owner of the car. The court also found that the partnership was not the owner and therefore not liable. As we have seen that determination is supported by sufficient evidence. Plaintiffs have appealed from that portion of the judgment. Inasmuch as a retrial of the issue of ownership as to appellant alone might result in a determination that appellant was not the owner, hence, leaving plaintiffs in the position where neither the partnership nor appellant was the owner, and hence not liable as such, the judgment in favor of the partnership is also reversed. Otherwise, there would be inconsistent judgments on the same facts, because if appellant was merely acting as the partnership's agent and thus not liable, then the partnership would necessarily be the owner, and therefore liable. Such inconsistent judgments will not be permitted to stand. (See *Southern Pacific Co.* v. *City of Los Angeles,* 5 Cal.2d 545 [55 P.2d 847].) From the circumstances presented, either the appellant or the partnership was the owner within the scope of section 402 of the Vehicle Code. On retrial that issue should be resolved upon the introduction of proper evidence.

For the foregoing reasons the judgment is reversed both as to appellant and the partnership, and the cause remanded for a new trial to determine the sole isssue of ownership of the car at the time of the accident, and thereupon fix liability upon the owner pursuant to section 402 of the Vehicle Code for the damages suffered by plaintiffs.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Traynor, J., and Griffin, J. pro tem., concurred.