[Civ. No. 10047. First Appellate District, Division One.—December 15, 1936.]

TOM PIACUN, Respondent, v. ANDREW HEXEM, Appellant.

William B. Chaplin for Appellant.

Irving M. Liner and Lionel B. Benas for Respondent.

KNIGHT, J.—While walking across a street in Oakland, plaintiff was struck and injured by an automobile driven by the defendant Roy Osborn. Claiming that his injuries were proximately caused by Osborn's negligence, he brought this action for damages against Osborn in which he joined as party defendant Andrew Hexem, alleging that Hexem was the owner of the automobile and that it was being driven by Osborn with Hexem's permission. The defendants filed a joint answer denying that the automobile was negligently operated, or that Hexem was the owner thereof; and by way of special defense they pleaded that plaintiff was injured through his own carelessness. The trial court sitting without a jury found in favor of plaintiff on all contested issues, and awarded him damages in the sum of $7,500, Hexem's liability, as owner, for the payment of the judgment being limited to $5,000. (Sec. 1714¼, Civ. Code, now sec. 402, Vehicle Code.) Hexem has appealed from that portion of the judgment so entered against him, and the appeal is presented on the judgment roll. As grounds for reversal he contends that the specific facts found by the trial court prove that he never was the owner of said automobile, or at most established that approximately two months prior to the accident he transferred in good faith whatever ownership he

may have had in said automobile to Gladys Osborn, and that in consummation of such transfer he complied with all legal requirements to absolve himself as such owner of any liability for imputed negligence imposed by said section $1714\frac{1}{4}$ of the Civil Code.

The accident happened on December 31, 1933, and the following are the essential facts found by the trial court relating to the original purchase of the automobile and the subsequent transfer of appellant's ownership therein: In 1932, Gladys Osborn, who is Hexem's daughter and the wife of the defendant Roy Osborn, wanted to purchase an automobile on credit, and in order to obtain the necessary loan thereon she asked her father's permission to use his name as purchaser. As an accommodation to his daughter he consented to have her do so, and the automobile was registered in his name with the motor vehicle department. However, the automobile was delivered to Mrs. Osborn, and at all times thereafter she retained possession of it and made all of the payments thereon. She made the final payment early in November, 1933, and thereupon, so the court went on to find, "said Gladys Osborn had defendant Andrew Hexem indorse said ownership slip on said automobile and give the same to her". No notice was given to the state motor vehicle department "of the indorsement or transfer of said ownership slip from Andrew Hexem to Gladys Osborn", and in January, 1934, approximately one month after the accident happened, "the pink ownership slip was transferred to Roy Osborn, Jr., the son of the defendant Roy Osborn"; so that at no time did Gladys Osborn's name appear as registered or legal owner on the records of the motor vehicle department.

At the time the accident happened, the conditions under which the owner of an automobile upon the sale or transfer thereof might terminate the statutory liability imposed upon him by said section $1714\frac{1}{4}$ were prescribed in section $45\frac{3}{4}$ of the California Vehicle Act, and that section (which has since been superseded by sections 177 and 178 of the Vehicle Code) read as follows: "Whenever the owner of a motor vehicle registered under this act shall sell or transfer his interest in and the possession of said motor vehicle to another, said owner shall immediately notify the division of motor vehicles of such sale or transfer, giving the date of same, the names and addresses of such owner and of the transferee, and

such description of the vehicle as may be called for in any official form provided for such purpose by the division; provided, however, that in the event said notice be given or in the event of failure to give said notice, an owner who has made a *bona fide* sale or transfer of such motor vehicle and delivered possession thereof to a purchaser and who has made proper indorsement and delivery of the certificate of ownership as provided in this act, shall not by reason of any of the provisions of this act be deemed the owner of such motor vehicle so as to be subject to liability under the provisions of section 1714¼ of the Civil Code of this state.''

In the present case, as will be noted, it affirmatively appears from the trial court's findings that the transfer by appellant to Gladys Osborn of whatever interest he may have had in said automobile was unconditional; that the automobile was at all times in her possession; that at the time of such transfer and in consummation thereof appellant indorsed the certificate of ownership and delivered the same to her; and that all of these transactions took place some two months prior to the accident. Therefore, since no suggestion whatever is made by the findings or by respondent on this appeal, that the transfer was not made in good faith, it would seem clear that under the proviso embodied in section 45¾ appellant was, on and after the date of such transfer, indorsement and delivery, absolved from any statutory liability which may have been theretofore imposed upon him by said section 1714¼, by reason of his registered ownership. As pointed out in *Bunch* v. *Kin*, 2 Cal. App. (2d) 81 [37 Pac. (2d) 744], said section 45¾, which was enacted in 1931, two years subsequent to the enactment of section 1714¼, provides two methods whereby the owner of an automobile, upon the unconditional sale or transfer thereof, may relieve himself of such liability, namely, by giving the required notice of the sale or transfer to the state motor vehicle department, and by the indorsement and delivery of the certificate of ownership to the purchaser or transferee. Says the court in this regard: ''In order to protect a vendor, the legislature in 1931 enacted section 45¾ of the California Vehicle Act, which provides that the owner may relieve himself from liability either by notifying the department of motor vehicles of the sale, *or by indorsement and delivery of the certificate of*

*ownership to the purchaser."* (Italics ours.) In the present case, appellant followed the latter method. ·

Respondent contends, however, that the clause "and who has made proper indorsement and delivery of the certificate of ownership as provided in this act", as used in the proviso to section 45¾, means a transfer of title in conformity with the provisions of section 45 of the California Vehicle Act, which require, first, a *joint* indorsement of the certificate of ownership by the transferor and the transferee written with pen and ink on the reverse side of the certificate; secondly, *the forwarding by the transferce* of the certificate within ten days to the motor vehicle department; thirdly, the issuance to the transferee by said department of a new certificate; and subdivision (e) of said section then goes on to declare that until said department "shall have issued said new certificate of registration and certificate of ownership . . . delivery of such vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose". And respondent argues, therefore, that since Mrs. Osborn, the transferee, at no time prior to the happening of the accident, joined in the indorsement of said certicate nor forwarded the same to the motor vehicle department, appellant's liability as owner for imputed negligence, under section 1714¼, continued to remain in force.

We find no merit in the foregoing contention. Section 1714¼ was enacted in 1929. It imposed upon the owner of an automobile a new and unusual liability which partook of the nature of a penalty (*Swing* v. *Lingo*, 129 Cal. App. 518 [19 Pac. (2d) 56]), namely, a statutory liability for the tortious act of another, independent of the existence of any relationship of principal and agent or master and servant, and not touched upon by any other statute. However, neither in section 1714¼ nor elsewhere in the law did the legislature at that session prescribe the procedure whereby the owner, upon the sale or transfer of his ownership, might terminate such liability. Therefore, in the absence of such an express law, the requirements of section 45 of the California Vehicle Act which was enacted several years prior to 1929 for the evident purpose of determining as between vendor and vendee the question of passing of title, doubtless governed. But as will be seen, under the provisions of that

section the termination of the vendor's liability depended entirely upon the subsequent acts of the transferee; that is, in signing the certificate of ownership and forwarding the same bearing the joint endorsement, within ten days, to the motor vehicle department. Therefore, in that situation and for the obvious purpose of relieving the transferor of the apparent unjust responsibility for any neglect, failure, or refusal on the part of the transferee to comply with the requirements of said section 45, the legislature at its next session, in 1931, without disturbing the operation of said section 45, added a new section, 45¾, to the California Vehicle Act, wherein it was provided in effect that if upon an unconditional, *bona fide* sale or transfer of the vehicle and delivery of possession thereof to the purchaser the vendor indorsed and delivered the certificate of ownership to the transferee, he should no longer "be deemed the owner of such motor vehicle so as to be subject to liability under the provisions of section 1714¼ of the Civil Code . . ." And that it was the intention to make the requirements of section 45¾ thereafter controlling seems clear, because if it had been contemplated that the provisions of said section 45 should continue to be used, after 1931, as the standard in determining whether an owner had absolved himself from such liability, there would have been no necessity whatever for the enactment of section 45¾. Moreover, the wording of the proviso itself shows that it was the legislative intent that the transferor's indorsement alone and the delivery by him to the transferee of the certificate of ownership under the circumstances there stated would suffice to terminate such statutory liability because in this respect it declares: " . . . *an owner* who has made a *bona fide* sale or transfer . . . *and who has* [the singular being used] made proper indorsement and delivery of the certificate of ownership as provided in this act, shall not . . . be deemed the owner . . . ", etc. (Italics ours.) In any event, in drafting section 45¾ the legislature made no definite reference therein to the requirements of section 45 and it is beyond the power of the courts to insert them by judicial construction. As said in *Swing* v. *Lingo, supra,* since section 1714¼ imposes "a new and unusual liability which partakes of the nature of a penalty, it should not, at least, receive a construction favoring the imposition of such liability".

The case of *Parke* v. *Franciscus*, 194 Cal. 284 [228 Pac. 435], upon which respondent so strongly relies, is not in point. It was decided in 1924, long prior to the enactment of section 1714¼ creating the statutory liability here sued upon, and was an action *ex contractu*, based entirely on the provisions of section 45 of the California Vehicle Act, to determine whether, as between the successors in interest of the original vendor and vendee, there had been a passing of title to the vehicle sold.

For the reasons stated it is ordered that the judgment as to appellant be reversed with directions to the trial court to revise the conclusions of law embodied in its decision to conform to the views herein expressed, and thereupon to enter judgment in appellant's favor.

Tyler, P. J., and Cashin, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 11, 1937.