[Civ. No. 11834. Second Appellate District, Division One.—September 21, 1939.]

A. L. DENNIS, Respondent, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Appellant.

Louis Ferrari, Edmund Nelson, and John E. Walter, for Appellant.

Daniel M. Potter and George S. Hupp for Respondent.

WHITE, J.—This is an appeal by defendant and cross-complainant from an adverse judgment rendered in an action to quiet title and determine the respective rights of the parties in and to a certain automobile.

The practically uncontroverted facts are that on March 16, 1937, plaintiff, Annie L. Dennis, purchased a 1935 Plymouth coupe from Paul Schwab, a dealer in used automobiles. In this transaction plaintiff traded in a used car and paid the balance of the purchase price in cash to Schwab. Being a used car, the Plymouth coupe had previously been registered with the California state motor vehicle department and had attached to it the license plates issued to that vehicle. Actual delivery of the Plymouth coupe was made by the dealer, Schwab, to plaintiff, Mrs. Dennis, and at all times thereafter possession of the automobile remained with plaintiff. However, at the time payment was made for and possession of the car taken by plaintiff she did not procure from the dealer the ownership certificate; she did not sign it on the back thereof as transferee, nor did she forward the same to the state motor vehicle department within ten days for transfer to her name, as required by sections 175 to 179 of the California Vehicle Code. Instead, the purchaser relied on the promise of the dealer when he told her at the time of the sale that he would send the ownership certificate, commonly and hereafter referred to as the "pink slip", to the motor vehicle department and would attend to the legal formalities in connection therewith. The dealer, however, instead of fulfilling his promise to plaintiff purchaser, kept the "pink slip" belonging to her Plymouth coupe, and on April 1, 1937, negotiated a conditional sales contract with one H. M. Magruder for a 1935 Plymouth coupe, for which Magruder paid the dealer, Schwab, $50 in cash, gave his promissory note for $100,

and executed a conditional sales contract for instalment payments in the sum of $434.52, thus making the total purchase price of the vehicle sold to Magruder $584.52. In executing the conditional sales contract with Magruder, the dealer, Schwab, described therein the Plymouth coupe he had already sold and delivered to plaintiff herein, and which of course he could not deliver to Magruder, and instead he delivered to Magruder another 1935 Plymouth coupe different from that described in the conditional sales contract with Magruder. Then, taking the ''pink slip'' belonging to the automobile sold to plaintiff herein and which the dealer Schwab had promised to forward to the motor vehicle department, Schwab had Magruder sign the same as transferee, and attached the ''pink slip'' to the Magruder conditional sales contract. Later the same day the dealer, Schwab, took the ''pink slip,'' registration certificate, conditional sales contract and a dealer's report of sale to a branch of the defendant Bank of America National Trust and Savings Association, where the latter agreed to discount it, and thereupon the dealer assigned the Magruder contract to the bank, delivered the ownership certificate and the registration certificate, together with the dealer's report of sale, to the bank, and received from the latter a valuable consideration therefor. Through the perfidy of the dealer, Schwab, the bank held a conditional sales contract and a ''pink slip'' for the Plymouth coupe that had been delivered to plaintiff, Mrs. Dennis, by the dishonest dealer, for which the latter had received full payment.

Without actual knowledge of plaintiff's claim to the automobile, the bank on April 2, 1937, forwarded the ''pink slip'', registration certificate and dealer's report of sale to the motor vehicle department at Sacramento, and on April 9th the department issued a new ''pink slip'' showing H. M. Magruder as registered owner and defendant bank as legal owner. To further complicate matters, it appears that on the evening of the day when the dealer Schwab procured $50, a promissory note and a conditional sales contract from Magruder for·the Plymouth automobile, Schwab made another deal with Magruder wherein they rescinded the purchase of the Plymouth automobile and Magruder purchased a Ford, for which he executed another conditional sales contract, received back his hundred-dollar note, and was assured by the dealer Schwab that the conditional sales contract he had theretofore exe-

cuted for the Plymouth would be destroyed immediately upon Schwab's return to his office, which of course Schwab did not do because he had already assigned and delivered the Magruder contract for a Plymouth coupe to defendant bank and received his consideration therefor.

Some two months later, when a payment was due under the Magruder conditional sales contract for the Plymouth coupe, the bank notified him thereof, whereupon Magruder called at the bank and informed it of the rescission of that contract, resulting in a disclosure of the fraud perpetrated by the dealer Schwab, the latter in the meantime having taken his departure for places unknown. Plaintiff then commenced this action to quiet title in her to the Plymouth coupe paid for by her and delivered to her by Schwab and to foreclose any right, title or interest in or to the automobile claimed by defendant bank. By appropriate pleadings defendant bank claimed the automobile free and clear of all liens of any person whomsoever and contended that it has a lien on the Plymouth coupe in the possession of plaintiff for the balance due on the conditional sales contract in the sum of $381.31. Following the rendition and entry of judgment in favor of plaintiff, the defendant bank prosecutes this appeal therefrom, as well as from an order denying its motion for a new trial, but now abandons its appeal from the order denying the motion for a new trial and consents that the same may be dismissed.

At the time the automobile was sold to respondent on March 16, 1937, the pertinent sections of the California Vehicle Code affecting transfers of automobiles were as follows:

"Sec. 175. Endorsement of Certificate Upon a Transfer. Upon a transfer of the title or any interest of the legal owner or owner in or to a vehicle registered hereunder, the person whose title or interest is to be transferred shall write his signature with pen and ink, and the transferee shall write his signature and address with pen and ink, in the appropriate space provided upon the reverse side of the certificate of ownership issued for such vehicle."

"Sec. 179. Transferee to Apply for Transfer. Whenever any person has received as transferee a properly endorsed certificate of ownership, the registration card and possession of the vehicle described in said certificate and card, such transferee shall within ten days thereafter forward such certifi-

cate and card with the proper transfer fee to the department and thereby make application for a transfer of registration, except as provided in the next section.''

''Sec. 186. When Transfer Deemed Complete. No transfer of the title or any interest in or to a vehicle registered hereunder shall pass nor shall delivery of any said vehicle be deemed to have been made and any attempted transfer shall not be effective for any purpose until transfer of registration is made and the department has issued a new certificate of ownership and registration card with respect thereto as provided herein, except as a transferor may be estopped by law to deny a transfer and except as provided in sections 178 and 180 hereof and in Chapter 3 of this division.''

In this regard it is the contention of appellant that respondent having failed to comply with the aforesaid provisions of the Vehicle Code, no transfer of title or interest in the Plymouth coupe was made to her; that delivery was not deemed to have been made to her, and that the attempted transfer from the dealer to respondent was ineffective for any purpose. It is further argued that appellant proved legal title in itself by virtue of the ownership certificate which it obtained from the motor vehicle department. In support of its position appellant in the main relies upon the above-quoted provisions of section 186 of the Vehicle Code. It is true, as claimed by appellant, that the section provides that no transfer of title or of any interest in or to a registered vehicle shall pass and that delivery of any such vehicle shall not be deemed made until transfer of registration is accomplished and the motor vehicle department has issued a new certificate of ownership and registration card. The same section also provides that the provisions hereof cannot be availed of by a transferor who ''may be estopped by law to deny a transfer''. In *Boles* v. *Stiles,* 188 Cal. 304 [204 Pac. 848], this language was construed to mean that where, as in the case before us, the transferring dealer by his own act and agreement placed respondent in the ''immediate and exclusive'' possession of the automobile, such transferor cannot invoke the provisions of the quoted statute. Undoubtedly, innocent parties who suffer damage by reason of noncompliance with the section by a transferor and transferee can take advantage of its provisions, but it would be abhorrent to justice and shocking to every semblance of equity to allow a trans-

feror to profit by his own fraud in dealing with his transferee. ██ It is obvious that the provisions of section 186 of the Vehicle Code were not available to the dealer Schwab. Therefore, while appellant bank, as the assignee of the transferor, Schwab, succeeded to all his right, title and interest in the Schwab-Magruder nonnegotiable instrument, it also inherited the infirmities of such contract and received the same subject to all available defenses. With reference to respondent, Mrs. Dennis, appellant bank stood in the same position as its assignor, Schwab, and like him is estopped to claim the protection of the estoppel provisions of section 186 of the Vehicle Code.

██ We are further impressed with the fact that the purported sale by Schwab to Magruder was not a valid sale of the Plymouth coupe then possessed by the respondent, Mrs. Dennis, after sale and delivery to her by Schwab, and the conditional sales contract assigned to appellant bank and predicated and founded as it was upon such pretended and fictitious sale, is not a valid instrument. We are drawn to this conclusion because the attempted sale by Schwab to Magruder of the Plymouth coupe was unaccompanied by any actual and continuous change of possession between Schwab and Magruder. Indeed, such change of possession from Schwab to Magruder was impossible because Schwab did not have in his possession the Plymouth coupe he pretended to sell Magruder, he having previously sold and delivered the same to respondent, Mrs. Dennis, and accepted her money therefor. As was said in *Davenport* v. *Alexander*, 53 Cal. App. 688, 690 [200 Pac. 771], "the attempted transfer was not accompanied by such a change of possession as is required under the provisions of section 3440 of the Civil Code. Under that law a transfer of personal property is ineffectual and void against creditors where it is not 'accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred'."

██ Even though it be conceded that the sale by Schwab to respondent, Mrs. Dennis, was not valid, she was nevertheless a creditor of Schwab's entitled as such to bring an action against him for money had and received, consisting of the $476 she paid Schwab on the purchase price of the automobile. Being such a creditor, the purported sale from Schwab to Magruder, being unaccompanied by any actual change of

possession as required by section 3440 of the Civil Code, was ineffectual and void as against her. In *Washington Lumber etc. Co.* v. *McGuire*, 213 Cal. 13 [1 Pac. (2d) 437], it was held that the aforesaid Vehicle Code provisions with reference to the transfer of title to automobiles was not intended to provide an exclusive and complete means of transferring such property and does not exclude the transfer of motor vehicles from the provisions of section 3440 of the Civil Code; the court there saying: "It must be concluded, therefore, that whatever reasons of policy or practical expediency might be advanced in favor of defendant's proposition, the legislature has given no indication of an intention to exclude the transfer of motor vehicles from the provisions of section 3440, and without such an indication, we must hold the section applicable to them."

It must be remembered that in the case before us, wherein equitable principles are involved, the respondent, Mrs. Dennis, when she purchased the Plymouth coupe, paid her money therefor, and at the suggestion of the dealer entrusted him with the "pink slip" to forward the same to the motor vehicle department at Sacramento. In so doing she followed a custom testified by a supervising investigator of the division of registration, department of motor vehicles of this state, to be the procedure followed in "about ninety-five per cent of the sales made by dealers"; in connection with which the witness further testified:

"They" (the dealers) "secure the certificate, the ownership certificate, if they have it in their possession, if not, they generally get it from their safety deposit box, have the customer sign on as the new owner, issue a dealer's report of the sale, and attach them both together and forward them to the Department and then the transfer is made by the Department and the ownership certificate and white slip is made to the respective legal and registered owner, if they are the registered and legal owner, if not both to the registered owner."

This same witness was asked the following question: "Q. Then what you have just stated, Mr. Smith, is not what the Motor Vehicle Department in any way recommends, is that correct? A. Well, answering that question, we have in our Manual, a dealer's manual of procedure which requires the dealer to send the ownership certificate directly to Sacramento with the report of sales on all sales of used cars."

Vigorous objection was made to the foregoing line of testimony in the trial court, and its admission is now assigned by appellant as prejudicial error. We think it was admissible upon the issue raised by appellant that respondent was negligent in not securing the ''pink slip'' on purchasing her Plymouth coupe, and that it was her negligence that enabled Schwab to impose upon the appellant bank, by reason of which appellant asserts she should be held responsible.

As to the claimed negligence on the part of respondent, it is to be noted that only thirteen days elapsed from the time she entrusted the ''pink slip'' to the dealer until he negotiated the fictitious contract with appellant bank. Had a substantial period of time elapsed and had respondent remained indifferent to the nonreceipt by her of the ''pink slip'' from the motor vehicle department at Sacramento, some degree of negligence might be predicated upon her inactivity, but thirteen days does not appear to us to be such a length of time as would arouse the anxiety of an ordinarily prudent and cautious person. Also in this connection it must be remembered that at the time it discounted the fictitious conditional sales contract for the dealer Schwab, appellant bank made no inquiry or investigation as to the correctness of the description of the automobile purportedly sold to Magruder, nor as to the *bona fide* character of the transaction. Indeed, appellant bank did not notify Magruder of the assignment of his contract to them until some two months after they had discounted it and then only when a payment thereon became due. Had appellant bank demanded of the dealer Schwab that the automobile referred to in the conditional sales contract be produced for its inspection, and had it examined the serial number and motor number of the Plymouth coupe, it would have discovered the fraud, and if it had contacted Magruder prior to discounting the fictitious conditional sales contract, it would have discovered that Magruder and the dealer Schwab had by mutual agreement rescinded the contract upon which Schwab was attempting to obtain money from the bank. In the light of what we have just said, appellant is not aided by the provisions of section 3543 of the Civil Code.

Appellant next complains that the court erred in not making findings on the issues presented by its affirmative defense and cross-complaint. The issues thus tendered went to

the question of whether or not respondent should have procured from Schwab the "pink slip" of the Plymouth properly endorsed to her; as to whether or not respondent was estopped to deny that appellant had an interest in the Plymouth coupe to the extent of $384.91, the balance due on the fictitious contract at the time of trial; whether or not payments were due and unpaid to appellant under the contract signed by Magruder; whether by reason of the default of payments on the Magruder contract appellant had the right or any right of possession of the Plymouth coupe; and whether the reasonable value of said automobile was $25 per month as stipulated; whether appellant had been damaged in the sum of $25 per month for each month since April 1, 1937; also whether respondent was liable to appellant for said damage. In view of what we have said with reference to the law applicable to the factual situation herein, coupled with the findings as made by the court, we conclude that no evidence was introduced sufficient to sustain a finding in favor of appellant upon any of the issues presented by its affirmative defense or cross-complaint.

Appellant's final contention that the complaint and amendment thereto did not state a cause of action, and that respondent did not prove a cause of action, is without merit.

The purported appeal from the order denying the motion for a new trial is dismissed; and for the reasons herein stated the judgment from which this appeal is taken is affirmed.

York, P. J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 20, 1939. Carter, J., did not participate.