[Civ. No. 12435.   First Dist., Div. Two.   Sept. 21, 1943.]

ZELLA SMITH et al., Appellants, v. WESTERN CASU-ALTY AND SURETY COMPANY (a Corporation), Respondent.

Gumpert & Mazzera, Emil Gumpert, Harry Mazzera, J. Calvert Snyder, Rutherford, Jacobs, Cavalero & Dietrich, Newton Rutherford, D. R. Jacobs, Philip Cavalero, Stephen Dietrich and Richard W. Dickenson for Appellants.

Neumiller & Ditz and C. H. Hogan for Respondent.

DOOLING, J. pro tem.—Plaintiffs appeal from a judgment in favor of defendant in an action to recover upon a policy issued by defendant to Bank of America National Trust and Savings Association (hereinafter called the bank) as administrator of the estate of J. E. Funk, deceased, and insuring against liability for damages from the operation of certain automobiles belonging to said estate. The policy was issued on July 27, 1935. Among the automobiles covered by this policy was a De Soto sedan. After proceedings regularly had the probate court on December 26, 1935, made an order confirming the sale of this De Soto sedan to Mrs. J. E. Funk and pursuant to this order in January, 1936, the certificate of ownership of the sedan properly endorsed was delivered to Mrs. Funk. Mrs. Funk left this certificate at the office of the California Highway Patrol in San Andreas to be forwarded to the office of the Motor Vehicle Department for the issuance of a new certificate to her some time in January, 1936, but for some reason the certificate was not received in the Sacramento office until June 5, 1936, and a certificate of ownership was not issued to Mrs. Funk until June 16, 1936. In the meantime and on May 10, 1936, the automobile, while operated by one Dan Morotti with the consent of Mrs. Funk, collided with another automobile causing the injuries to plaintiffs herein and plaintiffs thereafter recovered judgment for damages against Morotti and Mrs. Funk by reason of such injuries. Plaintiffs then brought the present action upon the policy of insurance above mentioned.

The policy contained among others, the following provisions:

"(J)  In the event any automobile covered hereunder is sold, transferred or assigned, this Policy shall not inure to the benefit of the purchaser, transferee or assignee, except by the consent of the Company endorsed hereon; and no assignment of interest hereunder shall bind the Company, unless the consent of the Company shall be endorsed hereon."

"Additional Assureds

"The insurance provided by this Policy shall be available,

in the same manner and under the same conditions as it is available to the named assured, to any person operating, and/or any other person, while riding in, and/or to any other person, firm or corporation legally responsible for the operation, of any of the automobiles described in the Schedule of Statements, provided such use or operation is lawful and with the permission of the named Assured, . . . provided that (a) no person, firm or corporation to whom the automobile described herein has been sold, transferred, or assigned by the named Assured, shall be entitled to recover hereunder, unless this Policy is transferred or assigned in accordance with Condition J. hereof. . . .''

The trial court found that at the time of the injuries to plaintiffs the De Soto sedan had been sold, transferred or assigned to Mrs. Funk within the meaning of the quoted provisions of the policy, and since no consent thereto had been endorsed upon the policy by defendant the injuries to plaintiffs were not covered by the policy.

The correctness of this conclusion depends on the proper construction of the quoted policy provisions in view of the language of sections 178 and 186 of the Vehicle Code, reading:

"178. Whether notice of a transfer be given or not as hereinbefore required an owner who has made a bona fide sale or transfer of a vehicle and has delivered possession thereof to a purchaser and has made proper endorsement and delivery of the certificate of ownership as provided in this code shall not by reason of any of the provisions of this code be deemed the owner of such vehicle so as to be subject to civil liability for the operation of such vehicle thereafter by another.''

"186. No transfer of the title or any interest in or to a vehicle registered hereunder shall pass nor shall shall delivery of any said vehicle be deemed to have been made and any attempted transfer shall not be effective for any purpose until transfer of registration is made and the department has issued a new certificate of ownership and registration card with respect thereto as provided herein, except as a transferor may be estopped by law to deny a transfer and except as provided in sections 178 and 180 hereof and in Chapter 3 of this division.''

It is appellants' primary contention that under the broad language of section 186 there could be no "sale, assignment or transfer'' to Mrs. Funk, as contemplated by Condition

J of the policy until June 16, 1936, the date that a certificate of ownership was issued to her. This might be true were the all inclusive language of the first part of section 186 not substantially qualified by the later exceptions. The language "except as provided in section(s) 178" so modifies the preceding language of section 186 that its effect is that upon delivery of the automobile and the endorsed certificate the title does pass to the transferee so as to make the transferee the owner, and to divest the transferor of his ownership, (to quote the language of sec. 178) "so as to be subject to civil liability for the operation of such vehicle thereafter by another."

Upon such delivery the transferee becomes the owner for the purpose of fixing liability for the operation of the car by another under section 402 Vehicle Code (*Ferroni* v. *Pacific Finance Corp.*, 21 Cal.2d 773, 778 [135 P.2d 569]) and the transferor ceases to be owner for that purpose (*Piacun* v. *Hexem*, 18 Cal.App.2d 145 [63 P.2d 315]).

Under the express terms of the policy the bank (administrator) as owner was the primary assured. We see no escape from the conclusion that when the bank as owner was no longer liable for the operation of the automobile, by reason of the probate sale and delivery of the automobile and the endorsed certificate to Mrs. Funk, the automobile had been "sold, transferred or assigned" to Mrs. Funk within the intent of condition J of the policy."

Appellants rely strongly upon *Votaw* v. *Farmers A. Inter-Ins. Exchange*, 15 Cal.2d 24 [97 P.2d 958, 126 A.L.R. 538]. This case is not in point. It was there held that a rider attached to the policy had the effect of modifying a provision contained in the policy itself. In our case the "additional assureds" clause, under which appellants seek to recover, was not contained in a rider, but was one of the integral provisions of the printed policy; and the "additional assureds" clause contained within itself the language hereinabove quoted: "provided that (a) no person, firm or corporation to whom the automobile described herein has been sold, transferred or assigned by the named Assured, shall be entitled to recover hereunder, unless this Policy is transferred or assigned in accordance with Condition J hereof."

The language of the policy in this case expressly negatives a construction holding that Condition J was in any respect modified by the "additional assureds" clause.

In *Sly* v. *American Indemnity Co.*, 127 Cal.App. 202

[15 P.2d 522] also relied upon by appellants, the primary assured was held liable for damages by reason of ownership of the automobile, and the court held that the policy covered him although he had transferred an equitable interest to another. The accident giving rise to the liability occurred on February 9, 1930, and no new certificate had been issued to the transferee. At that time section 45 (e) of the Motor Vehicle Act read:

"Until said division shall have issued said new certificate of registration and certificate of ownership . . . delivery of such vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose."

This section was sweeping and all inclusive and, unlike section 186 Vehicle Code, contained no exceptions. It was not until 1931 that section 45¾ of the Motor Vehicle Act was first enacted to provide (Stats. 1931, p. 2105):

". . . provided, however, that in the event said notice be given or in the event of failure to give said notice, an owner who has made a bona fide sale or transfer of such motor vehicle and delivered possession thereof to a purchaser and who has made proper endorsement and delivery of the certificate of ownership as provided in this act, shall not by reason of any of the provisions of this act be deemed the owner of such motor vehicle so as to be subject to liability under the provisions of section 1714¼ of the Civil Code of this state."

By reason of the difference in the controlling statutory provisions the Sly case cannot be authority for the proper construction of section 186 Vehicle Code as applied to a policy containing the provisions against transfer of ownership involved in this case.

Appellants rely on the Sly case for another argument, that since Mrs. Funk before the probate sale to her had the full use of the De Soto sedan with the permission of the bank, the subsequent sale and transfer to her did not increase the risk and therefore did not constitute a material breach of condition J of the policy.

In the Sly case the question, as already pointed out, was whether the named assured who remained liable for the hazard insured against, lost his rights under the policy by the alleged breach of condition. In the case before us the question is

quite different, whether persons not named in the policy are covered by the "additional assureds" clause, when those persons are excluded from coverage by the express terms of the clause relied upon. The coverage cannot thus be extended to persons expressly excluded from coverage by the terms of the policy itself.

Finally appellants complain of the refusal of the trial judge to permit them to prove an estoppel by the statement of one Ahearn, the broker who sold the policy, that Mrs. Funk was covered after the sale without compliance with Condition J of the policy. The record shows that after an offer of proof on this subject the trial court said:

"You would have to show the agent's authority even if that were admissible at all."

Counsel for appellants elicited the following answer from Ahearn on this subject:

"My duties as agent for the Western Fire Insurance Company and the Western Casualty and Surety Company are those of recording agent, with power to bind the company."

The words "with power to bind the company" were stricken on motion of counsel for respondent as the conclusion of the witness. This action of the trial court was clearly proper. The record shows no foundation of authority in the agent to bind the company by the claimed representations.

Judgment affirmed.

Nourse, P. J., and Spence, J., concurred.