[Civ. No. 13780.   First Dist., Div. One.   Aug. 31, 1948.]

CLARE WEINBERG et al., Respondents, v. C. A. WHITE-BONE et al., Appellants.

Geo. M. Naus and Donald Seibert for Appellants.

Ingemar E. Hoberg for Respondents.

WARD, J.—This appeal involves the statutory provision (Veh. Code, § 402) necessary to relieve a person from civil liability as "owner" of a vehicle at the time of an accident, and Vehicle Code, sections 186, 177 and 178, which relate to or modify section 402.

The judgment is based upon two verdicts, one for the sum of $6,000 in favor of plaintiff Philip Weinberg, and the other in the sum of $1,250 in favor of plaintiff Clare Weinberg. The defendants are Cecil A. Whitebone and Selma S. Whitebone, individually, and as copartners doing business as Midtown Motor Sales Company, and Midtown Motor Sales Company, a copartnership. The complaint joins as a codefendant Carl S. Feuerhelm, driver of the automobile which collided with a "pickup truck" operated by Philip Weinberg. The record shows that Feuerhelm was served but defaulted. So far as the questions raised on this appeal are concerned the appellants may be referred to as "Midtown."

Appellants contend that the trial court erred (1) in directing a verdict in favor of plaintiffs, (2) in denying the motion for a directed verdict in favor of the appealing defendants, and (3) in denying the motion made by the appealing defendants for judgment notwithstanding the verdict.

The testimony of a salesman employed by Midtown shows that the latter has a main office at Van Ness Avenue and O'Farrell Street in San Francisco, where its records, papers and money are kept, and a block away at Van Ness Avenue and Ellis Street has a used car lot, with a suboffice for negotiating sales. Both offices are open between 8:30 a. m. and 6 p. m. On the afternoon of November 26, 1945, defendant Feuerhelm,

a U. S. Navy enlisted man, who desired to purchase a car, and two other sailors, entered Midtown's used car lot. The general manager of Midtown Motor Sales Company stated in his deposition: "The purpose of buying the car was for the purpose of traveling to his home in Harper's Ferry, Iowa, from San Francisco, being discharged from the Navy and taking his mileage, rather than being shipped home." The salesman testified that he showed the sailors a Ford, which was purchased, and that he accompanied Feuerhelm to the main office where "the papers" were filled out. The bill of sale shows payment in full of $303.38 cash, made up as follows: Price, $295; license transfer, $1.00; sales tax, $7.38. It is dated November 26, 1945, and at the bottom states, "Received copy Cert. of transfer, invoice," signed, "Carl S. Feuerhelm." A power of attorney was signed by Feuerhelm and witnessed by the salesman. The form of the power of attorney, dated November 26, 1945, reads in part: "NOT VALID UNLESS PROPERLY WITNESSED BY A DISINTERESTED PERSON." The body of the document appoints and creates the "Midtown Motor Sales Co., to act as my attorney in fact, to sign all papers and documents that may be necessary in order to secure California registration, or that may be necessary to effectuate a transfer of ownership on the following vehicle . . ." On the reverse side is the filing stamp of the Motor Vehicle Department, dated November 29, 1945, three days after the accident. The power of attorney was signed and witnessed in blank, which was the customary practice of the company. No conversation occurred between the salesman and Feuerhelm relative to the power of attorney or the pink slip. The salesman had never turned over a pink certificate to a purchaser.

In his deposition the general sales manager of Midtown stated that Feuerhelm asked him "what would be the best procedure in effecting transfer of title to him, due to the fact that he was going from California to Iowa. I told him that I thought it would be proper to have the title transferred in California, which would be forwarded to him, and he would have a clear California title on the car which would allow him to dispose of it very readily. And if he would sign a power of attorney for us to transfer the title, we would make the necessary arrangements to have it done, which we did." Feuerhelm drove the car away some time before the closing hour of 6 p. m. The collision with plaintiffs occurred at about

7 :30 p. m.—all on November 26, 1945. A stipulation and documentary evidence establish that Midtown on November 29, 1945—three days after the sale and collision—made hand delivery of the necessary papers "Which would include an application for reregistration in the name of the buyer Feuerhelm, and it might be weeks or months after that before the Department [of Motor Vehicles] acts upon it." Feuerhelm did not receive the pink certificate at any time though by letter he requested it from Midtown.

A motion for nonsuit was denied and the court advised counsel that it would instruct the jury to return a verdict against all defendants who made appearance in the case, and that the questions to be presented to the jury would be confined to damages. The three questions heretofore noted as appellants' points on appeal may be considered together. Appellants frankly limit the question as follows: "The appellate issue, shortly stated, is liability or non-liability of Midtown under Vehicle Code, sec. 402. Conversely, the appeal presents no issues about negligence of Mr. Feuerhelm (the driver), contributory negligence, causation, nature or extent of injuries, or damages. At the trial Midtown conceded, and now again concedes, that Philip Weinberg's damages exceeded the $6,000.00 ceiling ($5,000.00 for personal injury and $1,000.00 for damage to property) under sec. 402. And it is conceded that the evidence adequately supports, as to amount, the $1,250 awarded by her verdict to Clare Weinberg."

Section 402 has reference to the liability of an owner for the negligence of another person resulting from the operation of the vehicle "in the business of such owner or otherwise." It limits the amount of liability of the owner for imputed negligence and subrogates the rights of the person injured to the owner against the operator. Under the terms of the contract of conditional sale the section sets forth the respective rights of the owner, the vendee or his assignee. This is not a case wherein the title was to vest in the buyer upon the performance of a condition by him. (Civ. Code, § 2981.) The facts of this case do not show that the sale was to be consummated upon the performance of any duty or condition to be effected or executed by the buyer as in a conditional sale contract, and hence cases cited by appellants or respondents touching this specific subject need not be mentioned except insofar as the reasoning in some particular case may bear upon the present problem. Some of the citations reflect the changes

which have been made in statutory provisions and cases construing them. The statutes as they stood at the time of the accident control the issue here. A fair example of the cases cited is *Dennis* v. *Bank of America,* 34 Cal.App.2d 618 [94 P.2d 51]. There Annie Dennis purchased from Paul Schwab, a used car dealer, an automobile, giving as part payment her used car. Although she obtained possession of the car she did not get the pink slip, but relied on Schwab's promise that he would send it to the Motor Vehicle Department. Schwab, however, negotiated the pink slip on a conditional sale with one Magruder, turning over the contract and pink slip to the Bank of America. The pink slip was registered with Magruder as registered owner and the bank as legal owner. When Dennis brought a quiet title action she prevailed, the court ruling that the provisions of section 186 could not be availed of by a transferor who may be estopped to deny the transfer, and that the bank stood in Schwab's shoes as his assignee. The court also pointed out that there was no valid sale from Schwab to Magruder, and that (p. 625) Dennis followed—in entrusting the dealer with the pink slip to be forwarded to the Motor Vehicle Department—"a custom testified by a supervising investigator of the division of registration, department of motor vehicles of this state, to be the procedure followed in 'about ninety-five per cent of the sales made by dealers.' " In the Dennis case the subject of fraud was involved, a question entirely lacking in the present case. To rely on the rule of estoppel in any case involving a transfer of a motor vehicle, a good factual basis must be presented for its application. (*Wargin* v. *Wargin,* 29 Cal.2d 843 [180 P.2d 349].)

If Midtown held a clear title to the motor vehicle in question then there was an unconditional bona fide sale, with the price paid in full and possession of the vehicle delivered to the vendee. Section 177 provides: "Whenever the owner of a vehicle registered hereunder sells or transfers his title or interest in, and delivers the possession of, said vehicle to another, said owner shall immediately notify the department of such sale or transfer giving the date thereof, the name and address of such owner and of the transferee and such description of the vehicle as may be required in the appropriate form provided for such purpose by the department. . . . Every dealer upon transferring by sale, lease or otherwise any vehicle, whether new or used, of a type subject to registration hereunder, shall immediately give written notice of such transfer

to the department upon the appropriate form provided by it." Section 178 provides: "An owner who has made a bona fide sale or transfer of a vehicle and has delivered possession thereof to a purchaser shall not by reason of any of the provisions of this code be deemed the owner of such vehicle so as to be subject to civil liability for the operation of such vehicle thereafter by another when such owner in addition to the foregoing has fulfilled either of the following requirements: . . . When such owner has made proper indorsement and delivery of the certificate of ownership and delivered the certificate of registration as provided in this code. . . . When such owner has delivered to the department or has placed in the United States mail, addressed to the department, either a notice as provided in Section 177 or appropriate documents for registration of such vehicle pursuant to such sale or transfer." Section 186 provides: "No transfer of the title or any interest in or to a vehicle registered hereunder shall pass and any attempted transfer shall not be effective unless and until the parties thereto have fulfilled either of the following requirements: . . . The transferor shall have made proper endorsement and delivery of the certificate of ownership and delivery of the registration card to the transferee as provided in this code and the transferee has delivered to the department or has placed in the United States mail, addressed to the department, such certificate and card when and as required under this code with the proper transfer fee and thereby makes application for a transfer of registration . . . The transferor shall have delivered to the department or shall have placed in the United States mail addressed to the department the appropriate documents for the registration or transfer of registration of such vehicle pursuant to such sale or transfer except as provided in Section 178."

Midtown, the owner and dealer, neglected to make proper endorsement and delivery of the certificate of registration or in lieu thereof did not immediately give written notice of the transfer and the date to the department.

In *Smith* v. *Western Casualty etc. Co.,* 60 Cal.App.2d 508 [141 P.2d 10], an automobile liability insurance policy was involved. The court said (p. 512): "The language 'except as provided in section(s) 178' so modifies the preceding language of section 186 that its effect is that upon delivery of the automobile and the endorsed certificate the title does pass to the transferee so as to make the transferee the owner, and

to divest the transferor of his ownership, (to quote the language of sec. 178) 'so as to be subject to civil liability for the operation of such vehicle thereafter by another.'

"Upon such delivery the transferee becomes the owner for the purpose of fixing liability for the operation of the car by another under section 402 Vehicle Code (*Ferroni* v. *Pacific Finance Corp.*, 21 Cal.2d 773, 778 [135 P.2d 569]) and the transferor ceases to be owner for that purpose (*Piacun* v. *Hexem,* 18 Cal.App.2d 145 [63 P.2d 315].)" It must be noted that it is not only the delivery of the automobile but likewise the certificate. The transferee in this case, though he paid cash for the possession of the motor vehicle, was not "subject to civil liability for the operation of such vehicle" until the endorsed certificate passed from the dealer to the purchaser of the vehicle.

Appellants stress the question of ownership and permission to operate the vehicle. In *Krum* v. *Malloy*, 22 Cal.2d 132 [137 P.2d 18], a motor vehicle case, it was held that under a statute providing that an owner is responsible for the injury or death resulting from the negligent operation of the automobile, proof of permission and ownership is essential to impute negligence to the owner and, if either fact is absent the statute is inoperative. In the present case if Feuerhelm, the driver of the automobile, was the "owner," as that word is used in the quoted Vehicle Code sections, then the question of permission to operate the car may be inferred from ownership. If he was not the owner within the purview of the sections noted it may be inferred that permission to operate the car was bestowed upon him by "Midtown." The question of permission may be eliminated from further consideration.

The word "delivery," applying to delivery of a certificate of ownership in this case, may not be defined as the word is used in the transfer of real or personal property generally. The word "delivery" as used in connection with the transfer of title and interest in such vehicle is subject to the requisites provided in the Vehicle Code. An owner who has made a bona fide delivery of possession of a motor vehicle to a purchaser is not relieved of civil liability for the operation of such vehicle by the purchaser or the purchaser's agent until the vendor owner has made proper endorsement and delivery of the certificate of ownership in accordance with the provisions of the code (§ 178). The delivery of a delegation of power by the vendee to the vendor to sign all papers and

documents that may be necessary in order to secure registration in this state or ''to effectuate a transfer of ownership'' on such vehicle cannot relieve either the vendee or the vendor of liability for an accident resulting in an injury to a third person. The vendor of such vehicle may be relieved only by performance of the delegated power in accordance with the provisions of the applicable statutes. When a motor vehicle is subject to registration as in this case, it is necessary to give immediate notice of the sale to the department. Midtown, the ''dealer,'' failed to give immediate written notice of such transfer to the department (§ 177).

There is a period of time in some instances following the transfer of title and possession of a motor vehicle when legally and factually it appears difficult to determine responsibility for injuries resulting from accidents. The Legislature has given an opportunity to the vendor to avoid liability by compliance with the statutory provision to endorse and deliver the registration slip to the vendee or by delivering to the department the data set forth in section 177 or by forwarding appropriate documents for the new registration. The duty of registration is primarily imposed upon the buyer (§ 179), but the failure to deliver the registration card to Feuerhelm prevented him from attempting to comply with the law. The dealer's acceptance of a power of attorney to effectuate the change of ownership could not relieve the dealer of his duty to comply with the statute. Dealers may not, under the guise of a power of attorney, escape liability unless there is a compliance with the terms of the power of attorney and *the law*.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 28, 1948.