[Civ. No. 17358.   Second Dist., Div. One.   Jan. 18, 1950.]

MADGE ARNOLD, Respondent, v. ERIC BERNAY, Appellant.

Kenny & Morris for Appellant.

Samuel A. Rosenthal for Respondent.

DRAPEAU, J.—Plaintiff sued defendants to recover damages for personal injuries sustained by her on March 15, 1947, while walking across the intersection of Pico and Centinela Boulevards in the city of Santa Monica, when she was struck by an automobile being driven by defendant Glenn L. Caskey.

At the conclusion of the trial the court found that at the time of the accident, defendant Eric Bernay was the owner of the car involved, a 1941 Chrysler sedan bearing 1946 New York State license No. 5EB; that at the same time, defendant Harry G. Brown, a minor, was the bailee of the automobile with the consent and permission of its owner, Eric Bernay; and that defendant Glenn L. Caskey was driving it with the

knowledge, permission and consent of said bailee and in his presence.

Judgment was rendered in favor of plaintiff for (a) $10,123 against Glenn L. Caskey; and (b) $5,000 against defendants Harry G. Brown, Ina F. Caskey and Eric Bernay, the latter's liability, as owner, for the payment of the judgment being limited to $5,000 under section 402 of the Vehicle Code.

Defendant Eric Bernay alone appeals from that portion of the judgment directed against him, urging that by the following specific acts he had divested himself of ownership of the automobile and was therefore protected from the statutory liability imposed by section 402 of the Vehicle Code for injuries sustained by respondent:

1. Actual notice of the transfer to Department of Motor Vehicles;

2. Surrender of possession of the automobile;

3. Delivery of an endorsed certificate of ownership (the pink slip).

It appears from the record that appellant Bernay, who was a resident of New York State, departed from California early in February of 1947, leaving the 1941 Chrysler in the hands of Edward H. Laguna with authority to sell it. Thereafter Laguna left the car with Glenn M. Frink at the latter's service station in Inglewood. On February 26th, Bernay executed and forwarded to Laguna a bill of sale transferring the automobile to Frink, and also forwarded the New York registration certificate endorsed in blank. Laguna immediately delivered these documents to Frink.

On March 5, 1947, Frink and Harry G. Brown visited the Los Angeles office of the Department of Motor Vehicles, when the department issued Verification of Vehicle, and demanded that a bill of sale be obtained from the original owner of the Chrysler, i.e., Royal Motors Company, a New York new-car dealer. On this same date, Frink delivered the car to Harry G. Brown, accepting a down payment of $400 for which he issued a receipt. On March 13th or 14th, Laguna received the bill of sale from Royal Motors Company to Bernay, which he delivered to Frink.

The accident out of which the instant action arises occurred on Saturday evening, March 15th, when the Chrysler was being operated by defendant Glenn L. Caskey in the company of defendant Harry G. Brown.

Thereafter on March 21, 1947, Frink executed and delivered his bill of sale of the automobile to Charles B. Brown, father

of Harry G. Brown, receiving from the Browns the sum of $1,050, of which sum Frink paid appellant Bernay the sum of $850, less license and transfer fees.

An application for California registration of non-resident automobile bears the Department of Motor Vehicles "Received" stamp of March 25, 1947, on which date the department issued a certificate of ownership (pink slip) to Charles B. Brown. Finally on May 1, 1947, the department issued a pink slip to Harry G. Brown, pursuant to the endorsement of his father, Charles B. Brown, on the reverse side of the March 25th certificate.

The witness Glenn M. Frink testified that on March 5, 1947, accompanied by Harry G. Brown, he took the bill of sale from Bernay to himself and also the New York certificate of ownership to the Department of Motor Vehicles in order "to consummate the sale of the automobile to Harry Brown, and with it, the transfer from New York to California registration." That he presented the documents to the department and requested that the automobile be transferred to Mr. Brown at that time; that the department did not comply with his request; that Mr. Brown paid him $400 and he gave possession of the car to Mr. Brown on that day, March 5, 1947, and that so far as he was concerned, "it was a sale."

At the time of the accident, the conditions by the performance of which appellant might have terminated the statutory liability imposed upon him by said section 402, were prescribed by sections 177 and 178 of the Vehicle Code:

Section 177(a). "Whenever the owner of a vehicle registered hereunder sells or transfers his title or interest in, and delivers the possession of, said vehicle to another, said owner shall immediately notify the department of such sale or transfer giving the date thereof, the name and address of such owner and of the transferee and such description of the vehicle as may be required in the appropriate form provided for such purpose by the department."

Section 178. "An owner who has made a bona fide sale or transfer of a vehicle and has delivered possession thereof to a purchaser shall not by reason of any of the provisions of this code be deemed the owner of such vehicle so as to be subject to civil liability for the operation of such vehicle thereafter by another when such owner in addition to the foregoing has fulfilled either of the following requirements:

"(1) . . . When such owner has made proper indorsement

and delivery of the certificate of ownership and delivered the certificate of registration as provided in this code.

"(2) . . . When such owner has delivered to the department or has placed in the United States mail, addressed to the department, either a notice as provided in section 177, or appropriate documents for registration of such vehicle pursuant to such sale or transfer."

It is further provided by section 186 of the Vehicle Code, that "No transfer of the title or any interest in or to a vehicle registered hereunder shall pass and any attempted transfer shall not be effective unless and until the parties thereto have fulfilled either of the following requirements:

"(1) *(Endorsement and delivery of certificate, and delivery of card, and application for transfer of registration.)* . . .

"(2) The transferor shall have delivered to the department or shall have placed in the United States mail addressed to the department the appropriate documents for the registration or transfer of registration of such vehicle pursuant to such sale or transfer except as provided in Section 178."

In *Smith* v. *Western Casualty etc. Co.,* 60 Cal.App.2d 508, 512 [141 P.2d 10], the following rule is enunciated:

"The language 'except as provided in section(s) 178' so modifies the preceding language of section 186 that its effect is that upon delivery of the automobile and the endorsed certificate the title does pass to the transferee so as to make the transferee the owner, and to divest the transferor of his ownership, (to quote the language of sec. 178) 'so as to be subject to civil liability for the operation of such vehicle thereafter by another.'

"Upon such delivery the transferee becomes the owner for the purpose of fixing liability for the operation of the car by another under section 402 Vehicle Code *(Ferroni* v. *Pacific Finance Corp.,* 21 Cal.2d 773, 778 [135 P.2d 569]) and the transferor ceases to be owner for that purpose *(Piacun* v. *Hexem,* 18 Cal.App.2d 145 [63 P.2d 315])."

In the case of *Weinberg* v. *Whitebone,* 87 Cal.App.2d 319, 325, 326 [196 P.2d 963], where an owner dealer made an unconditional sale without delivering the certificate of ownership to the transferee, the court, after quoting from *Smith* v. *Western Casualty etc. Co., supra,* commented as follows:

"It must be noted that it is not only the delivery of the automobile but likewise the certificate. The transferee in this case, though he paid cash for the possession of the motor vehicle, was not 'subject to civil liability for the operation of such

vehicle' until the endorsed certificate passed from the dealer to the purchaser of the vehicle. . . .

''There is a period of time in some instances following the transfer of title and possession of a motor vehicle when legally and factually it appears difficult to determine responsibility for injuries resulting from accidents. The Legislature has given an opportunity to the vendor to avoid liability by compliance with the statutory provision to endorse and deliver the registration slip to the vendee or by delivering to the department the data set forth in section 177 or by forwarding appropriate documents for the new registration. The duty of registration is primarily imposed upon the buyer (§ 179), but the failure to deliver the registration card to Feuerhelm [the buyer] prevented him from attempting to comply with the law. The dealer's acceptance of a power of attorney to effectuate the change of ownership could not relieve the dealer of his duty to comply with the statute.''

Applying the foregoing rules of law to the factual situation here presented, it is clear that appellant had divested himself of ownership in the Chrysler before it was involved in the accident by delivering the automobile to defendant Frink, together with a bill of sale and the endorsed certificate of ownership. It is also clear that had it not been for the demand of the Motor Vehicle Department for an additional bill of sale, the registration of the automobile in the transferee Brown would have been completed on March 5, 1947.

That portion of the judgment appealed from is reversed.

White, P. J., and Doran, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 16, 1950. Carter, J., and Spence, J., voted for a hearing.